**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

AMRIT KUMAR and TONY TEP,
Individually and on Behalf of All Others Similarly
Situated,

                          Plaintiff,

       v.

SAEXPLORATION HOLDINGS, INC., JEFF
HASTINGS, BRIAN BEATTY, BRENT
WHITELEY, L. MELVIN COOPER, GARY
DALTON, DAVID D. SGRO, GREGORY R.
MONAHAN, and MICHAEL FAUST,

                      Defendants.

Case No. 4:19-cv-03089

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT**

**TABLE OF CONTENTS**

**Page(s)**

I.      SUMMARY OF THE ARGUMENT .................................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDING.......................................................... 3

        A.      Procedural History ................................................................................................. 3

        B.      The Settlement Negotiations.................................................................................. 3

III.    THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY
        APPROVAL .............................................................................................................................. 4

        A.      Factors to Consider in the Preliminary Approval of a Class Action
                Settlement ................................................................................................................. 4

        B.      Plaintiffs and Co-Lead Counsel Have Adequately Represented the
                Class ........................................................................................................................... 5

        C.      The Proposed Settlement Is Fair, Reasonable, and Adequate ............................... 5

                1.      The Settlement Followed the Completion of Substantial
                        Investigation and Resulted From Arm's Length
                        Negotiations ................................................................................................ 6

                2.      The Complexity, Expense and Likely Duration of the
                        Litigation...................................................................................................... 7

                3.      The Stage of Proceedings and the Amount of Discovery
                        Completed...................................................................................................... 7

                4.      The Probability of Success on the Merits .................................................... 8

                5.      The Range of Possible Recovery .................................................................. 9

                6.      The Opinions of Class Counsel, Class Representatives and
                        Absent Class Members ............................................................................... 10

        D.      The Proposed Method of Distributing Relief is Effective .................................. 11

        E.      Attorneys' Fees, Reimbursement of Expenses, and Award to
                Plaintiffs.................................................................................................................. 11

        F.      The Parties Have Reached a Side Agreement Regarding Opt-Outs..................... 12

G. There Was No Preferential Treatment; The Plan is Designed to Treat Class Members Equitably .................................................................. 12

IV. THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 ................................................................. 13

 A. Numerosity .................................................................................................... 13

 B. Commonality .................................................................................................. 14

 C. Typicality ....................................................................................................... 15

 D. Adequacy ....................................................................................................... 16

 E. The Proposed Class Satisfies the Requirements of Rule 23(b)(3) ........................ 17

  1. Common Questions Predominate Over Any Issues Affecting Only Individual Members ............................................................ 17

  2. The Class Action Is Superior to Other Methods of Adjudication ............................................................................................ 18

V. THE PROPOSED FORM AND METHOD OF CLASS NOTICE SATISFY THE REQUIREMENTS OF RULE 23 ........................................................... 18

VI. PROPOSED SCHEDULE OF EVENTS ......................................................... 20

VII. CONCLUSION ......................................................................................... 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alves v. Main*,
　No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ........................................ 6

*Amchem Prod., Inc. v. Windsor*,
　521 U.S. 591 (1997) ............................................................................................ 13, 15, 17

*Ayers v. Thompson*,
　358 F.3d 356 (5th Cir. 2004) ............................................................................................ 4

*Baker v. SeaWorld Entm't, Inc.*,
　No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 20

*Barrie v. Intervoice-Brite, Inc.*,
　2006 WL 2792199 (N.D. Tex. Sept. 25, 2006) ........................................................ 13, 16, 17

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
　No. CIV. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) .............................................. 9

*Clark v. Lomas & Nettleton Fin. Corp.*,
　79 F.R.D. 641 (N.D. Tex. 1978) ............................................................................................ 7

*Cotton v. Hinton*,
　559 F.2d 1326 (5th Cir. 1977) ............................................................................................ 4

*DeHoyos v. Allstate Corp.*,
　240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................................... 13

*Faircloth v. Certified Fin. Inc.*, No. CIV. A.,
　99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) ................................................................ 5

*Forbush v. J.C. Penney Co.*,
　994 F.2d 1101 (5th Cir. 1993) ........................................................................................... 14

*Gen. Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147 (1982) ........................................................................................................... 15

*Gibb v. Delta Drilling Co.*,
　104 F.R.D. 59 (N.D. Tex. 1984) .................................................................................... 17, 18

*Hefler v. Wells Fargo & Co.*,
　No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................... 12

iii

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 20

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) .................................................................................. 9

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 12

*In re Core Bond Fund*,
2011 U.S. Dist. LEXIS 112949 (D. Colo. Sept. 30, 2011) ....................................... 17

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ................................................................................... 6

*In re Dynegy, Inc. Sec. Litig.*,
226 F.R.D. 263 (S.D. Tex. 2005)............................................................................. 16

*In re Elec. Data Sys. Corp. Sec. Litig.*,
226 F.R.D. 559 (E.D. Tex.)................................................................................ 14, 15

*In re Enron Sec. and ERISA Litig.*,
2003 WL 22494413 (S.D. Tex. July 24, 2003)..................................................... 13, 20

*In re FirstPlus Fin. Grp., Inc., Sec. Litig.*,
No. CIV.A.3:98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002)................. 14, 15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................... 8

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) ................................................................................ 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..................................................................... 11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)..................................................................................... 9

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................... 10

*In re StockerYale, Inc. Sec. Litig.*,
No. 1:05CV00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007)....................................... 20

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
  No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015)............................................ 12

*In re Universal Access, Inc. Sec. Litig.*,
  209 F.R.D. 379 (E.D. Tex. 2002)............................................................................................. 15

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................................................... 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................... 16

*Maher v. Zapata Corp.*,
  714 F.2d 436 (5th Cir. 1983) .................................................................................................. 19

*Manchaca v. Chater*,
  927 F. Supp. 962 (E.D. Tex. 1996)............................................................................................ 7

*McNamara v. Bre-X Minerals Ltd.*,
  214 F.R.D. 424 (E.D. Tex. 2002).............................................................................................. 5

*Miller v. Republic Nat. Life Ins. Co.*,
  559 F.2d 426 (5th Cir. 1977) .................................................................................................... 4

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) .................................................................................................. 14

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) .................................................................................................... 8

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .................................................................................................... 5

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................... 10

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 16

*Sheick v. Auto. Component Carrier LLC*,
  No. 2:09-CV-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)....................................... 8

*Sosna v. Iowa*,
  419 U.S. 393 (1975)................................................................................................................ 16

v

*Sved v. Chadwick*,
    783 F. Supp. 2d 851 (N.D. Tex. 2009) .................................................................. 6

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-CV-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .................................. 12

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) .................................................................. 10

*Williams v. First Nat. Bank*,
    216 U.S. 582 (1910) .................................................................................. 9

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................... 16

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ........................................................................ 13

**Statutes**

15 U.S.C. §78u-4 ...................................................................................... 11, 19

**Rules**

Fed. R. Civ. P. 23 ................................................................................... passim

**Other Authorities**

Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements: 2019 Review and
    Analysis, at 7 ("Cornerstone Research") ......................................................... 9, 10
Newberg on Class Actions §11.28, at 11-59 ........................................................... 6

## I.    SUMMARY OF THE ARGUMENT

Co-Lead Plaintiffs Amrit Kumar and Tony Tep (collectively, "Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for the entry of an order: (i) granting preliminary approval of the proposed settlement set forth in the Stipulation and Agreement of Settlement dated January 15, 2021 (the "Stipulation");[1] (ii) conditionally certifying the Class for purposes of such settlement; (iii)  approving the form and manner of giving notice of the proposed Settlement to the Class; (iv) approval of Strategic Claims Services ("SCS") as the Claims Administrator; and (v) setting a hearing date for final approval thereof (the "Settlement Hearing").

The proposed Settlement now before the Court will enable the Class[2] to recover Three Million Five Hundred and Fifty Thousand U.S. dollars ($3,550,000) in cash, in exchange for the dismissal of all claims against Defendants. As discussed below, the Settlement is a favorable result for the Class, recovering between approximately 10.98 % and 22.78% of estimated damages. This falls well within the range of reasonableness. The Settlement also provides a substantial benefit to the Class for it avoids the risks of prosecuting this Action through a decision on the motion to dismiss, discovery, summary judgment, trial, and the inevitable post-trial appeals, as well as the obstacles Plaintiffs would have to clear in order to obtain class

---

[1] All capitalized terms used herein, if not defined herein, are defined in the Stipulation, being filed concurrently herewith.

[2] The Class is defined as all persons and/or entities that purchased or otherwise acquired SAExploration Holdings, Inc. ("SAExploration") securities during the period from March 15, 2016 through February 7, 2020, inclusive. Excluded from the Class are (i) Defendants and their immediate family members; (ii) each of the foregoing's respective subsidiaries; (iii) their past and current executive officers and directors; (iv) their legal representatives, heirs, successors, or assigns; and (v) any entity in which any of the foregoing excluded persons have or had a controlling interest..  Also excluded from the Class are any persons and entities who or that submits a request for exclusion that is accepted by the Court and persons who have no compensable damages.

certification under the standards applicable in the Fifth Circuit Court of Appeals. Further, the Settlement also avoids the significant time and expense, including the conservation of judicial resources, that would result from continued litigation of this complex securities action and the effect these substantial costs would have on the limited insurance proceeds available to fund a settlement or satisfy a judgment against Defendants.

The Settlement was only reached after hard-fought, arm's-length negotiations. Before the Settlement, Plaintiffs and Co-Lead Counsel evaluated the facts and law and weighed the risks of protracted litigation. The Parties pursued informal negotiations in which information was exchanged and the parties' respective positions were discussed. On October 21, 2020, after attending a full-day mediation session with Mr. Robert Meyer, Esq. of JAMS, a highly experienced, neutral mediator.  Prior to the mediation session, Plaintiffs provided Defendants with a detailed mediation statement.  A settlement in principle was reached at the mediation.

Plaintiffs submit that while the merits of their case are strong, in light of Defendants' potential defenses, Defendant SAExploration's subsequent filing for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (Case No. 20-34306, Hon. Marvin Isgur presiding), Defendants' exposure to ongoing related civil litigation and regulatory and criminal investigations and proceedings—all of which are addressed further herein—and the related risks of prosecuting this litigation through trial and subsequent appeals, the Settlement is in the best interests of the Settlement Class.

Accordingly, Plaintiffs respectfully move this Court for preliminary approval of the proposed Settlement.

II.    **NATURE AND STAGE OF THE PROCEEDING**

A.    **Procedural History**

On August 18, 2019, plaintiff John Bodin commenced this action, then styled *John Bodin, Individually and on Behalf of All others Similarly Situated v. SAExploration Holdings, Inc., Jeff Hastings, Brian Beatty, and Brent Whiteley*, No. 4:19-cv-03089 (S.D. Tex.), on behalf of all persons who purchased or otherwise acquired SAExploration securities from March 15, 2016 through August 15, 2019, inclusive. (ECF No. 1.) The *Bodin* action asserted claims for violation of Sections 10(b)(5) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, against SAExploration and certain of the Officer and Director Defendants. On February 7, 2020, the Court appointed Amrit Kumar and Tony Tep as Lead Plaintiffs and appointed Reed R. Kathrein of Hagens Berman Sobol Shapiro LLP and Phillip Kim of The Rosen Law Firm, P.A. as Co-Lead Counsel ("Co-Lead Counsel"). (ECF No. 42.)

On July 15, 2020, Lead Plaintiffs filed the amended class action complaint, asserting claims against Defendants for violation of Sections 10(b)(5) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder, on behalf of all persons who purchased or otherwise acquired SAExploration securities from March 15, 2016 through February 7, 2020, inclusive (ECF No. 55, the "Amended Complaint"). Upon the filing of the Amended Complaint, the case was renamed *Amrit Kumar and Tony Tep, Individually and on Behalf of All others Similarly Situated v. SAExploration Holdings, Inc., et al.*, Case No. 4:19-cv-03089 (S.D. Tex.).

B.    **The Settlement Negotiations**

On October 21, 2020, certain of the Settling Parties attended a full-day mediation session with Robert Meyer of JAMS, a highly experienced, neutral mediator. Prior to the mediation session, Plaintiffs provided Defendants with a detailed mediation statement. A settlement in

3

principle was reached at the mediation, the substantive terms of which were memorialized in the Term Sheet dated December 1, 2020 (the "Term Sheet").

## III.   THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

### A.   Factors to Consider in the Preliminary Approval of a Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of a class action. The approval of a proposed settlement is within the discretion of the district court. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004). This discretion should be exercised in the context of a public policy, which strongly favors the pretrial settlement of class action lawsuits. *See Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits"); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (particularly with respect to class action settlements, "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex").

Pursuant to Rule 23(e)(1), as recently amended, the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

(2)   ***Approval of the Proposal.***  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

4

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

**B.    Plaintiffs and Co-Lead Counsel Have Adequately Represented the Class**

Plaintiffs have diligently prosecuted this Action on the Settlement Class's behalf, including by thoroughly investigating the facts and reviewing the criminal and regulatory actions to draft the detailed Amended Complaint, and negotiating a favorable settlement that provides recovery to Settlement Class Members.

**C.    The Proposed Settlement Is Fair, Reasonable, and Adequate**

Courts within the Fifth Circuit analyze six factors when assessing whether a proposed settlement is fair, reasonable and adequate:

(1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). At this stage, the Court need only conduct a preliminary review of these factors in considering whether the proposed Settlement falls within the range of what could be found to be fair, reasonable, and adequate. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002). As such, Co-Lead Counsel will provide a more detailed analysis of these factors in their briefing to be submitted prior to the Settlement Hearing.

5

### 1.     The Settlement Followed the Completion of Substantial Investigation and Resulted From Arm's Length Negotiations

"There is typically an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms length negotiations." *Faircloth v. Certified Fin. Inc.*, No. CIV. A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001). Moreover, courts generally will assume the negotiations were proper if the terms of the proposed settlement are fair. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("Thus courts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval.").

The Parties participated in extensive discussions, which were adversarial at times, with each side zealously representing its clients. There is a presumption of fairness when a settlement is reached with the assistance of a mediator. *Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (no evidence of collusion if settlement is a product of hard-fought mediation); *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties.") (internal quotations omitted). Under these circumstances—the rigorous negotiation process combined with the substantial investigation completed by Co-Lead Counsel—the Settlement is clearly the product of good faith, arm's-length negotiation between the Parties and is devoid of even a hint of fraud or collusion. Newberg on Class Actions §11.28, at 11-59 (counsel are "not expected to prove the negative proposition of a noncollusive agreement"). Therefore, the Court should find that the stage of proceedings and the arm's-length nature of the negotiations support preliminary approval of the Settlement.

**2.      The Complexity, Expense and Likely Duration of the Litigation**

Plaintiffs' claims involve numerous complex legal issues, and Defendants have significant defenses with regard to whether the allegedly false and misleading statements were made with scienter and support loss causation. Securities class actions are notoriously complex and expensive to litigate as they require extensive investigations, discovery, and experts to opine on class certification and damages. Assuming Plaintiffs survive Defendants' anticipated motions to dismiss, this Action would require substantial discovery by Co-Lead Counsel and their experts, as well as extensive deposition practice. Following the close of discovery, the Parties would then brief summary judgment and prepare for trial. In the meantime, Plaintiffs would move for class certification which again is costly and complex as they would have to retain an expert to opine on market efficiency. Accordingly, the costs and risks associated with litigating this Action to a verdict would be high, and the process would require many hours of the Court's time and its resources. *See Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978) (noting that the expense of trial can be "staggering," and carries with it the "distinct possibility" that the trial will "result in no recovery"). Finally, if taken to trial, this Action would easily require an additional one to two years before a recovery, if any, was obtained for the Class.

**3.      The Stage of Proceedings and the Amount of Discovery Completed**

At the time that the Parties reached the Settlement, Co-Lead Counsel had conducted a thorough investigation of the claims in preparing the Amended Complaint and consulted with damages experts. In addition, since the Amended Complaint was filed, the U.S. Securities Exchange Commission and U.S. Department of Justice investigations have progressed, providing Co-Lead Counsel and the Defendants with substantial additional information. Thus, by the time settlement discussions began, Co-Lead Counsel had a solid understanding of the strengths and

weaknesses of Plaintiffs' claims, both legally and factually, and were able to engage in a rigorous negotiation process with Defendants. There can be no doubt that the Parties reached the instant settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

Although Co-Lead Counsel was unable to conduct merits discovery before reaching the Settlement due to the PSLRA's discovery stay, they evaluated the relative strengths and weaknesses of the parties' position, and determined that the Settlement is fair, reasonable, and adequate in light of the Defendants' financial condition and risks of continuing litigation. *Sheick v. Auto. Component Carrier LLC*, No. 2:09-CV-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) ("[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions.") (citing *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("[F]ormal discovery [is not] a necessary ticket to the bargaining table.")); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though PSLRA had prevented discovery from ever taking place).

### 4.    The Probability of Success on the Merits

While Plaintiffs maintain that the Amended Complaint states strong claims that Plaintiffs remain prepared to litigate to trial, there are invariably risks associated with litigating a complex case such as this—particularly where, as here, Defendants have denied and continue to deny each, any, and all allegations of wrongdoing, fault, liability, or damage whatsoever that have or could have been asserted in the Amended Complaint. Even if Plaintiffs could have established materially false or misleading statements, there is a substantial risk that Plaintiffs will be unable to plead a strong inference of scienter against some of the individual Defendants by showing that they were aware of the alleged underlying fraud by Defendants Hastings, Whiteley, and Beatty at

8

the time the statements were made. Meeting the exacting requirements of the PSLRA to plead scienter is difficult. Plaintiffs would also have to defeat any motions for summary judgment that might be filed.

Moreover, this case presents substantial risks to the collectability of any judgment. Defendant SAExploration has recently reorganized under Chapter 11 of the U.S. Bankruptcy Code. The individual Defendants are covered by certain insurance policies, but those policies are limited, and subject to other claims. Further, Defendants Hastings, Whiteley, and Beatty, while insured persons under such policies, are subject to coverage defenses arising out of their conduct alleged in the Amended Complaint, such that collectability of any judgment from the existing policies of insurance may depend upon Plaintiffs' ability to establish scienter on the part of the other individual Defendants. Finally, as the insurance policies in question are subject to claims for defense costs in the regulatory, criminal, and other actions pending against Defendants, there is a significant possibility that the limits of all policies of insurance would be exhausted before Plaintiffs could obtain a final judgment.

When evaluated in light of these risks, the Settlement provides meaningful benefits to the Class and is consistent with the public interest, as it is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998).

### 5.    The Range of Possible Recovery

To assess the reasonableness of a proposed settlement seeking monetary relief, an inquiry "should contrast settlement rewards with likely rewards if [the] case goes to trial." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982). Under the proposed Settlement, the Class will receive $3.55 million in exchange for the release of all claims against Defendants.

Plaintiffs' estimate of maximum recoverable damages is between $15.58 million and $32.32 million. The settlement of $3.55 million represents, in Plaintiffs' estimation, between 10.98 % and 22.78% of Plaintiffs' estimate of maximum recoverable damages. This is well within the range of reasonableness for an action in which only claims under Section 10(b) of the Exchange Act are asserted. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements: 2019 Review and Analysis, at 7 ("Cornerstone Research").[3] Cornerstone Research also found that for cases with damages less than $25 million, the median settlement as a percentage of damages between 2010 and 2018 was 17.9% and for 2019 was 12.8%. Cornerstone Research at 6. Plaintiffs respectfully submit that considering the risks of continued litigation, as described above, the time and expense which would be incurred to prosecute the Action through a trial, and the limited insurance proceeds available to either fund a settlement or satisfy a future judgment in this Action, the Settlement represents a favorable recovery that is in the best interests of the Class.

### 6. The Opinions of Class Counsel, Class Representatives and Absent Class Members

"Counsel are the Court's 'main source of information about the settlement,' [. . .] and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and lead counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005). Here,

---

[3] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

Co-Lead Counsel have considerable experience in complex class action litigation and securities law and approve of the Settlement. *See infra* Section IV.(D). Lead Plaintiffs also, based on all facts and circumstances here, agreed to the terms of the proposed Settlement.[4]

In light of the foregoing, Lead Plaintiffs respectfully submit that the Settlement falls within the range of what could be found to be fair, reasonable and adequate and warrants this Court's preliminary approval.

### D. The Proposed Method of Distributing Relief is Effective

As demonstrated below in Section V, the method of the proposed notice and claims administration process are effective. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan governs how the Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan was prepared with the assistance of Lead Plaintiffs' damages consultant.

### E. Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Co-Lead Counsel intends to seek an award of attorneys' fees of no more than one third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $40,000. This fee request is in line with other settlements approved in recent cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014). Further, as explained in the proposed notice, Lead

---

[4] Class Members have not yet had the opportunity to review the terms of the Settlement. Therefore, Lead Counsel will advise the Court of the Class Members' reaction to the Settlement following completion of the notice process, as part of the analysis presented in support of final approval of the Settlement.

Plaintiffs intend to request an amount not to exceed $5,000 each, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with his representation of the Settlement Class.

### F.      The Parties Have Reached a Side Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of SAExploration securities represented by such opt outs equals or exceeds a certain amount, Defendants, provided they collectively agree, shall have the option to terminate the Settlement. Stipulation ¶ 10.4. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation (*id.*), the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017) (same).

### G.      There Was No Preferential Treatment; The Plan is Designed to Treat Class Members Equitably

A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013).  The Plan is fair, reasonable and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017). The Plan, set out in the Long Notice, attached as Exhibit A-1 to the Stipulation, explains how the Settlement proceeds will be distributed among Authorized

12

Claimants. The Plan provides that each Settlement Class Member will receive the same per-share amount. Lead Plaintiffs and all other Class Members will receive their payment pursuant to the same formula.

## IV.　THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

One of this Court's functions in reviewing a proposed settlement of a class action is to determine, preliminarily and only for purposes of the settlement, whether the action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997); *see, e.g., In re Enron Sec. and ERISA Litig.*, 2003 WL 22494413, at *2 (S.D. Tex. July 24, 2003) (preliminarily approving settlement and conditionally certifying class for settlement purposes). Rule 23(a) sets forth four prerequisites to class certification, which are referred to in the short-hand as: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. The class must also meet one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23.

"[T]he United States Court of Appeals for the Fifth Circuit has indicated a class may be certified for settlement purposes when doubt exists as to certification for litigation[.]" *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007). This Action is no exception, and Plaintiffs submit that the Class satisfies each of these requirements.

### A.　Numerosity

First, Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. A plaintiff is not required to show the exact number of class members at the time of class certification to meet this requirement. In addition, the court may also consider whether members of the proposed class are geographically dispersed. *Barrie v. Intervoice-Brite, Inc.*, 2006 WL 2792199, at *13 (N.D. Tex. Sept. 25, 2006). Numerosity is "generally assumed to

13

have been met in class action suits involving nationally traded securities[.]" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981). Here, SAExploration common stock was actively traded on the NASDAQ with, according to Plaintiffs' damages expert, approximately 11.85 million shares purchased during the Class Period. Plaintiff believes that the number of beneficial holders of SAExploration common stock could be in the hundreds of thousands and are geographically located throughout the United States, making joinder of all Class Members impractical. *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding numerosity where "it was likely that some of the putative class members were geographically dispersed"). Thus, numerosity is easily met.

### B. Commonality

Second, Rule 23(a)(2) is satisfied where there are questions of law or fact common to the class. *In re FirstPlus Fin. Grp., Inc., Sec. Litig.*, No. CIV.A.3:98-CV-2551-M, 2002 WL 31415951, at *6 (N.D. Tex. Oct. 28, 2002). Commonality does not require a showing that the interests and claims of the class members are identical; it requires only that "there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Here, questions which are common to the proposed Class include:

> (i) whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint; (ii) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about its business, operations and management; (iii) whether Defendants knew or recklessly disregarded that their Class Period statements were materially false and misleading; (iv) whether the price of SAExploration common stock was artificially inflated due to Defendants' statements; and (v) to what extent the members of the Class have sustained damages and the proper measure of damages.

Securities fraud actions containing common questions such as those listed above have repeatedly been held to be prime candidates for class certification. *See, e.g., In re Elec. Data Sys.*

14

*Corp. Sec. Litig.*, 226 F.R.D. 559, 564 (E.D. Tex.), *aff'd sub nom. Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005); *Firstplus*, 2002 WL 31415951, at \*3. In short, because the core complaint of all Class Members is that they purchased or acquired SAExploration common stock at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### C.     Typicality[5]

Third, the typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem Products, Inc.*, 521 U.S. at 625 (common issues test readily met in securities fraud cases). As with commonality, the test for typicality is not demanding. *See In re Elect. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. at 565. Typicality does not require a complete identity of claims, but rather, is satisfied when the representative plaintiff's claims arise out of the same event or course of conduct as the other class members and are based on the same legal theory. *Firstplus*, 2002 WL 31415951, at \*4; *see also In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. at 565 ("[f]actual differences do not defeat typicality if the claims arise from a similar course of conduct and share the same legal theories").

Plaintiffs' claims and the claims of the prospective Class arise out of the same allegedly unlawful conduct by the Defendants and the same allegedly false statements, and the proof Plaintiffs would be required to present to establish his claims would also prove the claims of the rest of the Class. *See In re Universal Access, Inc. Sec. Litig.*, 209 F.R.D. 379, 386 (E.D. Tex. 2002). Therefore, Plaintiffs' claims are typical of the claims of the Class and thus, Rule 23(a)(3) is satisfied.

---

[5] The Supreme Court has recognized that the commonality and typicality analyses "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

15

**D.    Adequacy**

Fourth, Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent. There are two prongs to this requirement: (i) the representatives must have interests that are not antagonistic to the interests of other members of the class; and (ii) the representatives must have retained attorneys who are qualified, experienced, and able to conduct the litigation. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Barrie*, 2006 WL 2792199, at \*4; *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 269 (S.D. Tex. 2005).

Here, as described above, Lead Plaintiffs' claims are typical of and coextensive with those of the Class. Lead Plaintiffs purchased SAExploration common stock as a result of Defendants' alleged materially false and misleading statements and were allegedly damaged thereby. Accordingly, there is no indication that Lead Plaintiffs' interests will conflict with those of the Class. Lead Plaintiffs therefore are adequate representatives for the Class.

As to the adequacy of Plaintiffs' counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs retained The Rosen Law Firm, P.A. ("Rosen Law") and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Co-Lead Counsel, and as their firm resumes demonstrate (Dkt. Nos. 20-5 and 23-5), both firms are highly experienced in securities class action litigation and have successfully prosecuted many securities and other complex class actions in courts throughout the United States. Courts have consistently found both Rosen Law and Hagens Berman to be well suited as class counsel in securities class actions. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336,

16

at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *23 (S.D.N.Y. Mar. 24, 2014). ("Hagens Berman collectively possesses hundreds of years of experience in complex litigation of all sorts, including class actions… Hagens Berman has obtained billions of dollars in recoveries on behalf of defrauded class members."); *In re Core Bond Fund*, 2011 U.S. Dist. LEXIS 112949, at *6-7 (D. Colo. Sept. 30, 2011) (noting that Hagens Berman attorneys are "very experienced and skilled practitioners in the securities litigation field," and "have considerable experience and capabilities as class action specialists").

Based on Co-Lead Counsels' experience, and their work in the matter thus far, the Court should conclude that Co-Lead Counsel have satisfied the adequacy requirements under Rule 23(g).

### E. The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

#### 1. Common Questions Predominate Over Any Issues Affecting Only Individual Members

To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual class members. *See Amchem Products, Inc.*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws"). Here, Rule 23(b)(3)'s predominance requirement is easily satisfied.

**2.      The Class Action Is Superior to Other Methods of Adjudication**

In addition, Rule 23(b)(3) requires that the Court determine whether a class action is superior to other methods of adjudication. Here, little question exists that a class action is superior to other available methods. But for this method of adjudication, there would be hundreds, if not thousands, of individual cases. "Class actions are considered superior when individual actions would be wasteful, duplicative, present managerial difficulty and be adverse to judicial economy." *Barrie*, 2006 WL 2792199, at *11; *see also Gibb v. Delta Drilling Co.*, 104 F.R.D. 59, 71 (N.D. Tex. 1984) ("Plainly, many small investors, purchasers of 100 or 200 shares, while clearly not without means, have not suffered sufficient damages to warrant an individual action. Those purchasers will have no visible recourse if this [class certification] motion is denied."). Further, "[t]he utility of the class action to cases involving the securities laws has been repeatedly recognized." *Id.*

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied. Thus, there are no issues that would prevent the Court from certifying this Class solely for settlement purposes and appointing Lead Plaintiffs as Class Representatives.

**V.      THE PROPOSED FORM AND METHOD OF CLASS NOTICE SATISFY THE REQUIREMENTS OF RULE 23**

Fed. R. Civ. P. 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Newberg on Class Actions §8.2 at 162- 65. The notice must contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

18

Additionally, the PSLRA imposes its own requirements for notice. To conform with the PSLRA, the notice must state: (i) the amount of the Settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (ii) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, a statement from each settling party concerning the issue(s) on which the parties disagree; (iii) a statement indicating which parties or counsel intend to make an application for an award of attorneys' fees and costs, and the amount that will be sought; (iv) the name, telephone number, and address of one or more representatives of counsel for the class who will be reasonably available to answer questions concerning any matter contained in the notice; (v) a brief statement explaining why the parties are proposing the settlement; and (vi) such other information as may be required by the Court. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

As detailed in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order," attached as Exhibit A to the Stipulation), Co-Lead Counsel and the Claims Administrator[6] propose to: (a) email the Summary Notice of Pendency and Proposed Securities Class Action Settlement ("Summary Notice") to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; or (b) mail copies of the Postcard Notice, if no electronic mail address can be obtained, by first-class mail, to all Class Members who can be identified with reasonable effort. The Claims Administrator will also make all reasonable efforts to give notice of the Settlement to nominees or custodians who held SAExploration Class A Common Stock during the Settlement Class Period as record owners but not as beneficial owners. In addition, the Claims Administrator will cause the

---

[6] In addition to the approvals mentioned above, Plaintiffs further request that the Court approve the appointment of SCS as the Claims Administrator. SCS will be responsible for, among other things, disseminating Notice, reviewing claims Class members submit, claims administration, and distributing funds to Authorized Claimants.

Summary Notice to be printed in *Investor's Business Daily* and transmitted once over the *GlobeNewswire,* one of the world's largest newswire distribution networks. SCS will also create a website dedicated to the Settlement to provide Settlement Class Members with important dates and to review documents, such as the Stipulation and Long Notice, as well as filing claims electronically.

The proposed notice program fulfills the requirements of due process because it alerts and informs those members of the Class who can be identified through reasonable efforts of all the information set forth above. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (a notice that "adequately described" the action and the terms of the proposed settlement, and informed "shareholders that additional information was available" "did not violate . . . due process rights"). *See also, e.g.*, *In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *1 (D.N.H. Dec. 18, 2007); *Enron Sec. and ERISA Litig.*, 2003 WL 22494413, at *3. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (citations omitted); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website).

## VI. PROPOSED SCHEDULE OF EVENTS

A proposed timetable listing the dates requested in the Preliminary Approval Order is set forth as Exhibit A hereto. The proposed dates will allow sufficient time for notice to issue, for class members to respond to the Notice and consider their options, and for objections to be brought to the Court's attention. The proposed schedule is consistent with schedules entered in other securities class actions.

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, granting: (i) preliminary approval of the Settlement; (ii) certification of the Class for purposes of settlement; (iii) approval of the form and manner of giving notice of the Settlement to the Class; (iv) appointment of SCS as Claims Administrator; and (v) a hearing date and time to consider final approval of the Settlement and related matters.

Dated: February 8, 2021

Respectfully submitted,

**STECKLER WAYNE COCHRAN PLLC**

 */s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No. 24027936
Braden M. Wayne
Texas Bar No. 24075247
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75219
Telephone: (972) 387-4040
Facsimile:  (972) 387-4041
Email: stuart@swclaw.com
          braden@swclaw.com

*Co-Liaison Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**

 */s/ Phillip Kim*
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brent J. LaPointe, Esq.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile:  (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: blapointe@rosenlegal.com

*Co-Lead Counsel for the Class*

**HILLIARD MARTINEZ GONZALES LLP**

 */s/ Marion M. Reilly*
Marion M. Reilly
John B. Martinez
719 South Shoreline, Suite 500
Corpus Christi, TX 78401
Telephone: (361) 882-1612
Facsimile:  (361) 882-3015
marion@hmglawfirm.com
john@hmglawfirm.com

*Co-Liaison Counsel for the Class*


**HAGENS BERMAN SOBOL SHAPIRO LLP**

 */s/ Reed R. Kathrein*
Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel for the Class*

22

**CERTIFICATE OF CONFERENCE**

I certify that I conferred with Defendants' counsel, all of whom are unopposed to the relief sought by this motion.

*/s/ Brent J. LaPointe*
Brent J. LaPointe

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Stuart L. Cochran*
Stuart L. Cochran

23