**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| AMRIT KUMAR and TONY TEP, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SAEXPLORATION HOLDINGS, INC., JEFF HASTINGS, BRIAN BEATTY, BRENT WHITELEY, L. MELVIN COOPER, GARY DALTON, DAVID D. SGRO, GREGORY R. MONAHAN, and MICHAEL FAUST, <br><br> Defendants. | **CLASS ACTION** <br><br> Case No. 4:19-cv-03089 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF THE PROPOSED CLASS ACTION SETTLEMENT, PLAN OF
ALLOCATION, AND CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     PROCEDURAL HISTORY.....................................................................................2

III.    FACTS ...................................................................................................................3

IV.     ARGUMENT .........................................................................................................4

      A.      Final Approval of Proposed Class Action Settlement. ............................4

          1.      Certification of the Class Pursuant to Fed. R. Civ. P. 23 is
               Appropriate. ...............................................................................4

          2.      The Court Should Finally Approve the Settlement Because
               it is Fair, Reasonable, and Adequate...........................................5

               a.      There Is a Presumption in Favor of Settlements,
                    Especially of Securities Class Actions; Settlements
                    Proposed by Competent and Experienced Counsel
                    Are Presumed to Be Fair...................................................6

               b.      The Proposed Settlement Readily Satisfied the Fifth
                    Circuit's Standard for Settlement......................................7

               c.      The Settlement Is Not the Product of Fraud or
                    Collusion. .........................................................................8

               d.      The Complexity, Expense, and Likely Duration of
                    Litigation.........................................................................8

               e.      The Stage of the Proceeding at Which Settlement
                    Was Achieved and the Amount of Discovery
                    Completed. .....................................................................10

               f.      The Probability of Success of the Merits......................11

               g.      The Range of Possible Recovery and the Difficulty
                    of Proving Damages.......................................................12

               h.      The Opinions of Lead Counsel and the Settlement
                    Class Members Favor Approval of the Settlement. .......14

      B.      Notice Was Adequate. ............................................................15

      C.      The Court Should Approve the Plan of Allocation...................16

i

V.     CONCLUSION .......................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayers v. Thompson*,
358 F.3d 356 (5th Cir. 2004) ........................................................................................... 7, 10

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978) ................................................................................................ 16

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................................. 14

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
No. CIV. 6:12-1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) ........................................... 13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 16

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .......................................................................................... 6, 7

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) .......................................................................................... 14

*Fla. Trailer & Equip. Co. v. Deal*,
284 F.2d 567 (5th Cir. 1960) ................................................................................................... 7

*Garza v. Sporting Goods Properties, Inc.*,
No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ............................... 12

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) .................................................................................................... 14

*Hicks v. Stanley*,
No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 16

*Ibarra v. Texas Emp. Comm'n*,
823 F.2d 873 (5th Cir. 1987) ................................................................................................... 7

*In re "Agent Orange" Prod. L*iab. Litig.,
611 F.Supp. 1396 (E.D.N.Y. 1985) .......................................................................................... 9

*In re Cendant Corp. Sec. Litig.*,
109 F.Supp. 2d 235 (D.N.J. 2000) .......................................................................................... 14

iii

*In re Chicken Antitrust Litig. Am. Poultry*,
669 F.2d 228 (5th Cir. 1982) ....................................................................................... 16

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ....................................................................................... 10

*In re Dell Inc.*,
No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. Jun. 11, 2010) ..................................... 10

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
447 F. Supp. 2d 612 (E.D. La. 2006)............................................................................ 7, 8, 11

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................. 16

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................................. 16

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ........................................................................ 11

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 11

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................... 16

*In re Lease Oil Antitrust Litig. (No. II)*,
186 F.R.D. 403 (S.D. Tex. 1999)................................................................................. 8, 10

*In re Microstrategy, Inc. Sec. Litig.*,
150 F. Supp. 2d 896 (E.D. Va. 2001) ........................................................................... 15

*In re Par Pharm. Sec. Litig.*,
No. CIV.A. 06-3226 ES, 2013 WL 3930091 (D.N.J. July 29, 2013) ..................................... 13

*In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*,
494 F. Supp. 2d 1097 (N.D. Cal. 2007) ........................................................................ 11

*In re Prudential Sec., Inc.*,
No. M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ......................................... 13

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................... 13

iv

*In re Shell Oil Refinery*,
　155 F.R.D. 552 (E.D. La. 1993).................................................................................. 8

*In re Train Derailment Near Amite Louisiana*,
　No. CIV.A. MDL NO. 1531, 2006 WL 1561470 (E.D. La. May 24, 2006) ........................... 15

*In re Warfarin Sodium Antitrust Litig.*,
　391 F.3d 516 (3d Cir. 2004)..................................................................................... 13

*In re Warner Commc'ns Sec. Litig.*,
　618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................................... 11

*Jenkins v. Trustmark Nat. Bank*,
　300 F.R.D. 291 (S.D. Miss. 2014) ........................................................................... 10

*Klein v. O'Neal, Inc.*,
　705 F.Supp. 2d 632 (N.D. Tex. 2010) ...................................................................... 12

*Lelsz v. Kavanagh*,
　783 F. Supp. 286 (N.D. Tex. 1991) .......................................................................... 14

*Maher v. Zapata Corp.*,
　714 F.2d 436 (5th Cir. 1983) .................................................................................... 6

*McNary v. Am. Sav. & Loan Ass'n*,
　76 F.R.D. 644 (N.D. Tex. 1977)................................................................................. 7

*Miller v. Republic Nat. Life Ins. Co.*,
　559 F.2d 426 (5th Cir. 1977) .................................................................................... 6

*Oppenlander v. Standard Oil Co. (Indiana)*,
　64 F.R.D. 597 (D. Colo. 1974) ................................................................................. 8

*Parker v. Anderson*,
　667 F.2d 1204 (5th Cir. 1982) .............................................................................. 7, 8

*Pearson v. Ecological Sci. Corp.*,
　522 F.2d 171 (5th Cir. 1975) .................................................................................... 6

*Pettway v. Am. Cast Iron Pipe Co.*,
　576 F.2d 1157 (5th Cir. 1978) .................................................................................. 6

*Reed v. Gen. Motors Corp.*,
　703 F.2d 170 (5th Cir. 1983) .......................................................................... 6, 8, 11

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ............................................................................... 10

*Rubenstein v. Republic Nat. Life Ins. Co.*,
   74 F.R.D. 337 (N.D. Tex. 1976) ...................................................................................... 7

*Ruiz v. McKaskle*,
   724 F.2d 1149 (5th Cir. 1984) ......................................................................................... 7

*Salinas v. Roadway Express, Inc.*,
   802 F.2d 787 (5th Cir. 1986) ........................................................................................... 8

*San Antonio Hisp. Police Officers' Org., Inc. v. City of San Antonio*,
   188 F.R.D. 433 (W.D. Tex. 1999) ................................................................................. 14

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) .................................................................. 8, 12, 15

*White v. NFL*,
   822 F.Supp. 1389 (D. Minn. 1993) ............................................................................... 16

*Williams v. First Nat. Bank*,
   216 U.S. 582 (1910) ......................................................................................................... 6

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) ........................................................................................... 7

## <u>Statutes</u>

15 U.S.C. § 78 ..................................................................................................................... 1

## <u>Rules</u>

Fed. R. Civ. P. 23 ................................................................................................................ 4

## <u>Regulations</u>

17 C.F.R. § 240.10b-5 ......................................................................................................... 2

## I.   INTRODUCTION[1]

Lead Plaintiffs Amrit Kumar and Tony Tep (collectively, "Lead Plaintiffs" or "Plaintiffs"), by and through Plaintiffs' Counsel,[2] and Defendants have resolved this litigation in its entirety for $3,550,000 in cash (the "Settlement"). In order to effect the settlement, experienced counsel formulated the Settlement's Plan of Allocation ("Plan of Allocation") with assistance from a damages expert. The Plan of Allocation equitably divides the Settlement between Settlement Class Members based on how many shares they bought, at what price, and when, and complies with loss causation principles.

Further, as the Court ordered,[3] copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form" and with the Notice, the "Notice and Claim Form") were mailed to potential Class Members, brokers, and nominee holders. Though the deadline for objection and exclusion is June 24, 2021, there have been no objections to date. There has only been only one (1) putative request for exclusion. Accordingly, the Court should approve the Settlement and the Plan of Allocation, and should finally certify the Class for settlement purposes and appoint Plaintiffs as Class representatives, finally approve the Plan of Allocation, and finally certify the proposed Settlement Class for purposes of the Settlement.

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings as set forth in the Preliminary Approval of Class Action Settlement (*see* ECF No. 95).

[2] "Plaintiffs' Counsel is Co-Lead Counsel The Rosen Law Firm, P.A. and Hagens Berman Sobol Shapiro LLP, together with and Liaison Counsel Steckler Wayne Cochran PLLC and Hilliard Martinez Gonzales LLP.

[3] *See generally* Order Granting Preliminary Approval of Class Action Settlement, ECF No. 95.

## II.    PROCEDURAL HISTORY

This is a federal securities class action alleging that Defendant SAExploration Holdings, Inc. ("SAEX") and certain of its senior executives (collectively, "Defendants") committed securities fraud and violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The Amended Class Action Complaint for Violation of the Federal Securities Law (the "Amended Complaint" or "Compl.") (ECF No. 55) alleges claims on behalf of all persons who purchased or otherwise acquired SAEX shares from March 15, 2016, through February 7, 2020 (the "Class Period").

This action was filed on August 18, 2019 (ECF No. 1). Amrit Kumar and Tony Tep timely moved for appointment under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* ECF Nos. 18-23. The Court duly appointed them Co-Lead Plaintiffs and approved their selection of Hagens Berman Sobol Shapiro LLP and The Rosen Law Firm, P.A. as Co-Lead Counsel ("Lead Counsel"). ECF No. 42.

On July 15, 2020, Lead Plaintiffs filed the Amended Complaint. ECF No. 55. On September 2, 2020, the Court stayed this action pending resolution of SAEX's bankruptcy petition for relief under Chapter 11 of the United States Bankruptcy Code; all pending motions became moot during the bankruptcy stay. *See* ECF No. 69. On September 22, 2020, Lead Plaintiffs filed their Motion to Modify Order Staying Case, requesting that the Stay Order be lifted as to Defendants Jeff Hastings, Brian Beatty, Brent Whiteley, L. Melvin Cooper, Gary Dalton, David D. Sgro, Gregory R. Monahan, and Michael Faust. ECF Nos. 73 and 74. The parties subsequently entered into several stipulations to extend the briefing schedule for Lead Plaintiffs' Motion to Modify Order Staying Case, and the motion remained pending. *See* ECF Nos. 76, 77, 82, 83, 84, 85, 86.

On October 21, 2020, the parties attended a full-day meditation with Mr. Robert Meyer, Esq. of JAMS, a highly experienced, neutral mediator. The parties exchanged mediation statements, and the parties debated the strengths and weaknesses of the claims and defenses in this action. The parties reached a settlement in principle during the mediation.

On December 1, 2020, the parties executed a settlement term sheet to resolve this action. Under the settlement term sheet, the parties agreed to cease all litigation activities except those related to the negotiation of the final settlement and preparation for seeking preliminary approval of the settlement. Lead Plaintiffs moved for preliminary approval (*see* ECF Nos. 90-92) and the Court granted Lead Plaintiffs' motion on March 15, 202 (ECF No. 95), thereby triggering the process of notifying Settlement Class Members to solicit claims, request exclusions, or object to the settlement.

### III.   FACTS

SAEX is a Delaware corporation headquartered in Houston, Texas,[4] that provides seismic data acquisition services; logistical support services; and processing and integrated reservoir geosciences services. The company serves integrated oil companies, national oil companies, and independent oil and natural gas exploration and production companies.

The Amended Complaint alleges that during the Class Period, Defendants misrepresented the accuracy of SAEX's financial reporting. Specifically, the Amended Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose that: (1) SAEX misclassified Alaska Seismic Ventures, LLC ("ASV"), a related company, as a variable interest entity; (2) SAEX had a controlling financial interest in ASV, which required SAEX to consolidate ASV in its financial statements; (3) SAEX had deficient internal controls over financial reporting;

---

[4] The company's stock trades on the NASDAQ under the ticker symbol "SAEX."

(4) these practices were likely to lead to an investigation of SAEX by the Securities and Exchange Commission ("SEC"); (5) SAEX would be forced to delay the filing of its quarterly report for the quarter ended June 30, 2019; and (6) as a result, Defendants' statements about SAEX's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *See generally* ECF No. 55.

On August 15, 2019, the market learned the truth when SAEX publicly  announced in a press release that (1) the SEC was investigating certain of its accounting matters that arose in 2015-2016; (2) SAEX would restate its previously issued financial statements for fiscal years 2015-2018 and delay filing its 10-Q for the quarter ended June 30, 2019; and (3) Defendant Hastings had been placed on administrative leave and resigned as Chairman; and (4) Defendant Whiteley had been terminated. Because of these disclosures, the price of SAEX's common shares declined $1.13 per share or over 34% on August 16, 2019, thereby damaging investors. *See generally* ECF No. 55.

Defendants dispute Lead Plaintiffs' allegations. In light of the risks and expenses of continued litigation, settlement of the action now provides class members with a certain cash recovery.

## IV.    ARGUMENT

### A.    Final Approval of Proposed Class Action Settlement.

#### 1.    Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate.

In its Preliminary Approval Order, the Court ruled that the Settlement Class, defined as "all persons (including, without limitation, their beneficiaries) who purchased SAExploration Common Stock during the period from March 15, 2016, through February 7, 2020, both dates

inclusive,"[5] satisfied "the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure…." ECF No. 95.

Plaintiffs respectfully submit that no circumstances have changed since the Preliminary Approval Order was granted. Thus, the Court should finally certify this as a class action for purposes of the Settlement.

### 2. The Court Should Finally Approve the Settlement Because it is Fair, Reasonable, and Adequate.

Lead Plaintiffs believe that the claims asserted herein are strong and have sufficient evidence to demonstrate Defendants' liability and millions of dollars in damages stemming from it. Nevertheless, Lead Plaintiffs recognize and knowledge the inherent problems of proof under, and possible defenses to, the securities law violations alleged and the time commitment and expense of prosecuting the case through class certification, summary judgment, trial and appeal. Consequently, Lead Plaintiffs believe that the proposed Settlement is an excellent result.

For their part, Defendants have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the claims alleged in the Amended Complaint. Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and that it is desirable that this litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation and Agreement of Settlement. As did Lead Plaintiffs, Defendants have taken into account the risks inherent in any litigation, especially in complex cases such as this one.

---

[5] Excluded from the Settlement Class are "(i) Defendants and their immediate family members; (ii) each of the foregoing's respective subsidiaries[;] (iii) their past and current officers and directors; (iv) their legal representatives, heirs, successors, or assigns; (v) any entity in which any of the foregoing excluded Persons have or had a controlling interest; and (vi) Persons who have no compensable damages." ECF No. 95.

As set forth below, the proposed Settlement is not only an excellent result from the perspective of Lead Plaintiffs, Defendants, and their respective counsel, but it meets all of the objective requirements for an approvable settlement established by the Fifth Circuit and its district courts.

**a.      There Is a Presumption in Favor of Settlements, Especially of Securities Class Actions; Settlements Proposed by Competent and Experienced Counsel Are Presumed to Be Fair.**

It is well-settled that compromises of disputed claims are favored by the courts. *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit has repeatedly held that settlements enjoy a highly-favored status, and "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975)). Settlements of class actions arising from federal statutory claims, including securities litigation, are "particularly favored." *See e.g., Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (courts "do not lightly reject [shareholder litigation] settlements"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (settlements of Title VII actions are strongly favored). "[T]here is an overriding public interest in favor of settlement" because class actions "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331.

In determining whether to approve a settlement, courts are not required to decide the merits of the action or substitute their own judgment for that of the parties or that of counsel. *See Maher*, 714 F.2d at 455. The Fifth Circuit has acknowledged that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel

6

determines that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

### b. The Proposed Settlement Readily Satisfied the Fifth Circuit's Standard for Settlement.

In deciding whether or not to approve a settlement, courts within the Fifth Circuit must ask whether the parties' proposed settlement is "fair, adequate and reasonable" and has been entered into without any collusion. *Cotton*, 559 F.2d at 1330; *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984); *Parker v. Anderson*, 667 F.2d 1204, 1208–09 (5th Cir. 1982); *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004); *Ibarra v. Texas Emp. Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987); *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619 (E.D. La. 2006) ("*ETS*"). In applying this standard, the court must determine whether, in light of the claims and defenses asserted by the parties, the proposed compromise represents a "reasonable evaluation of the risks of litigation." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In weighing the benefits obtained by the settlement against the potential benefits available should one side or the other prevail at trial (and preserve its victory on appeal), courts cannot expect the scales of justice to balance perfectly. Proponents of a settlement should not be made to "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330. The very object of a compromise "is to avoid the determination of sharply contested and dubious issues." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

The ultimate question for the court to determine in evaluating a proposed settlement "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."

*McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex. 1977); *Rubenstein v. Republic Nat. Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).

To answer this question, the Fifth Circuit inquires about the following six factors: (1) whether the settlement was a product of fraud of collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of proceedings and the amount of discovery completed; (4) the probability of Plaintiffs' success on the merits; (5) the range of possible recovery and the certainty of damages; and (6) the opinions of the participants, including class counsel, class representatives, and the absent class members. *Reed*, 703 F.2d at 172; *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 431-35 (S.D. Tex. 1999) (citing *Reed*); *Parker*, 667 F.2d at 1209; *Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986) *ETS*, 447 F.Supp. 2d at 619; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007). As demonstrated below, the Settlement is fair and reasonable when examined under these six criteria.

### c.      The Settlement Is Not the Product of Fraud or Collusion.

There is no doubt that settlement negotiations here took place at arm's length. The parties engaged in a lengthy negotiation process through their respective counsel during mediation before agreeing in principle to settle the case. Joint Decl. ¶18-20. at After agreeing to a term sheet, the parties further negotiated the detailed terms and conditions of the settlement in the weeks that followed. *Id.* Rather than being the result of fraud, collusion, or overreaching, this settlement is the product of extensive arms-length negotiations.

### d.      The Complexity, Expense, and Likely Duration of Litigation.

Courts value a certain and immediate recovery for plaintiffs, as opposed to the mere prospect of a big payday in the future: "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see*

*ETS*, 447 F.Supp. 2d at 620 ("an early settlement that obviated these delays and the risks of having to litigate the claims makes sense"). This maxim holds especially true for securities class actions governed by the unique pleading and proof requirements of the PSLRA.

Due to the high-stakes nature of this type of litigation, Defendants are represented by a prestigious law firms---Sidley Austin, McKool Smith, and Vinson Elkins---whose attorneys have considerable experience with securities litigation. Responding to and prevailing over such a vigorous defense would necessarily increase the costs of litigation for lead plaintiffs and the Class.

While Plaintiffs believe they can prevail in this action, they face material challenges including resolution of Lead Plaintiffs' Motion to Modify Order Staying Case (relating to Defendants' bankruptcy stay), the motion to dismiss stage, class certification, summary judgment, and trial. Should Lead Plaintiffs' claims survive Defendants' summary judgment motions, it would take several weeks to try the claims. The trial would be complex and expensive, as both sides would likely have numerous experts opining on damages and class issues---this does not include the extensive *Daubert* motion practice that would precede such testimony.

Not only would litigating this case through trial require an extraordinary commitment of time, money, and resources by Plaintiffs' Counsel, the likelihood of an appeal should Lead Plaintiffs prevail would force Class Members to wait even longer to see a recovery (if any). This lengthy delay reduces the present value of a hypothetical victory when compared to the certainty of an immediate settlement---one which eliminates the risk of ultimately recovering nothing. *See Strougo v. Bassini*, F.Supp. 2d 254, 260-61 (S.D.N.Y. 2003) ("Even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable

9

than this current recovery"); *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1396, 1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in the ability to make funds available promptly") (modified on other grounds).

     **e.**     **The Stage of the Proceeding at Which Settlement Was Achieved and the Amount of Discovery Completed.**

This factor inquires as to whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369. Courts are mindful of the interplay between this factor and other important considerations: "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Indeed, "'[a] settlement may be approved even where plaintiffs have not conducted formal discovery where plaintiffs… have access to the desired quantum of information necessary to achieve a settlement.'" *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014) (quoting *Lease Oil*, 186 F.R.D. at 432 and *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

Because of the high bar set by the PSLRA for pleading the elements of falsity and scienter in a securities fraud action, Lead Counsel, prior to filing the Complaint, conducted an extensive independent investigation of a wide variety of public sources, including SAEX's U.S. SEC filings and numerous news articles and analyst reports concerning SAEX's business and financial condition. Joint Decl. ¶32. Lead Counsel also retained private investigators, who conducted interviews with former SAEX employees and reviewed documents provided by sources. *Id.* Such an investigation can suffice to give plaintiffs enough information to settle. *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *8 (W.D. Tex. Jun. 11, 2010).

Furthermore, attendance at the October 21, 2020, mediation preparation and attendance allowed the parties to assess the strength of the case, the facts alleged, and the remaining stages of this action. *See e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) ("the key issue is whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions…. The sufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available… even when little or no formal discovery has been completed."). Consequently, Lead Plaintiffs have already expended quite a lot of time, effort, and money evaluating the merits of the claims alleged. For these reasons, the parties possess "sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case." *ETS*, 447 F.Supp. 2d at 620; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("the parties certainly have a clear view of the strengths and weaknesses of their cases").

### f.      The Probability of Success of the Merits.

Despite Lead Plaintiffs and Plaintiffs' Counsels' confidence in the strength of their case, for the many reasons stated above, proof of liability and damages could prove quite difficult. As a result, it would be "imprudent to presume ultimate success at trial and thereafter." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) (collecting cases where courts rejected proposed settlement and the ultimate recovery to plaintiffs turned out to be lower than that in the proposed settlement). Therefore, in evaluating the likelihood of success, a court "must compare [the terms of the settlement] with the likely rewards the class would have received following a successful trial of the case." *Reed, supra,* 703 F.2d at 172; *see also In re Prohibition Against Disclosing ENE Commc'ns to Settlement Judges*, 494 F. Supp. 2d 1097, 1105

11

(N.D. Cal. 2007) ("Most judges… understand that the task of analyzing a case and trying to predict the outcome of litigation is fraught with analytical and informational perils").

Here, Lead Plaintiffs face substantial risks in going forward with litigating this case. *See Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at \*33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating class actions of this size and complexity have caused cases to be considered "undesirable"). Defendants have and certainly will continue to argue that Lead Plaintiffs cannot establish that the alleged misstatements about SAEX's business and financial operations were false at the time they were made, as Defendants will claim that everything they disclosed to the public was accurate. Moreover, Defendants will vigorously argue that the evidence fails to demonstrate that Defendants knew about any misstatements and that any allegedly incomplete disclosures were not materially misleading.

### g. The Range of Possible Recovery and the Difficulty of Proving Damages.

"[A]fter determining if any legal or factual obstacles exist, a district court must make an inquiry into whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the Plaintiff's success on the merits." *Turner*, 472 F.Supp. 2d at 849-50. In assessing this factor, the Court "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Klein v. O'Neal, Inc.*, 705 F.Supp. 2d 632, 656 (N.D. Tex. 2010).

Lead Plaintiffs' damages expert performed a damages study and calculated class-wide damages based upon the material misrepresentations alleged in the Complaint, estimated damages of $15.58 million. Joint Decl. ¶21. The settlement of $3,550,000 represents approximately 22.78% of Lead Plaintiffs' estimate of damages. This is an excellent recovery for an action in which only

12

claims under Section 10(b) of the Exchange Act are asserted. *See* Ex. 1 (Laarni T. Bulan and Laura E. Simmons, Cornerstone Research, "Securities Class Action Settlements: 2020 Review and Analysis" (Mar. 2021), at p. 6, Fig. 5) (reporting median and average percentage of 2020 recoveries of 5.3% and 10%, respectively, in cases alleging violations of Rule 10b-5); *In re Par Pharm. Sec. Litig.*, No. CIV.A. 06-3226 ES, 2013 WL 3930091, at *2 (D.N.J. July 29, 2013) (approving $8.1 million settlement, which amounted to approximately 7% of class-wide damages).   [6]; *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. CIV. 6:12-1609, 2015 WL 965696, at *7 (W.D. La. Mar. 3, 2015) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.") (citation omitted); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses); *In re Prudential Sec., Inc.*, No. M-21-67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages). Cornerstone Research also found that for cases with damages less than $25 million, the median settlement as a percentage of damages between 20011 and 2019 was 16.8% and for 2020 was 19.7%. Cornerstone Research at 6. Plaintiff respectfully submits that considering the risks of continued litigation (as described above), the time and expense which would be incurred to prosecute the action through a trial, and the limited insurance proceeds available to either fund a settlement or satisfy a future judgment in this action, the Settlement represents a substantial recovery that is in the best interests of the Class.

Here, the Settlement represents approximately 22.78% of Plaintiffs' estimated damages. When compared with the "present value of the damages plaintiffs would likely recover if

---

[6] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis

successful, appropriately discounted for the risk of not prevailing," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004), the Settlement is abundantly fair, reasonable, and adequate. *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

### h.    The Opinions of Lead Counsel and the Settlement Class Members Favor Approval of the Settlement.

Because counsel have the best perspective of the strengths and weaknesses of their clients' positions, a proposed class action settlement will enjoy a "presumption of correctness" where the settlement is the product of arm's length negotiations between experienced, capable counsel. *San Antonio Hisp. Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 461 (W.D. Tex. 1999); *see also In re Cendant Corp. Sec. Litig.*, 109 F.Supp. 2d 235, 255 (D.N.J. 2000) (affording "significant weight" to counsel's recommendation). In fact, "[t]he endorsement of class counsel is entitled to deference" for this very reason. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007); *see also Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991), *aff'd,* 983 F.2d 1061 (5th Cir. 1993) ("the judge should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery"). Counsel for Defendants and Lead Plaintiffs engaged in arm's length negotiations and vigorously debated the relevant issues at mediation to reach the Settlement. While formal discovery was still underway, Lead Counsel conducted an extensive investigation and evaluated the strengths and weaknesses of Lead Plaintiffs' case. By proposing

the Settlement to Class members and the Court, Lead Counsel endorses the instant settlement as fair, reasonable, and adequate.

Class Members appear to agree. Pursuant to the Court's order, 43,691 Postcard Notices were sent to Class members and the Summary Notice was published once over *Globe NewsWire* and *Investor's Business Daily*. *See* Bravata Decl. ¶2-9. The deadline to object to any aspect of the Settlement is June 24, 2021. *Id.* The deadline to exclude oneself from the Settlement is June 24, 2021. *Id.* To date, no objections or valid requests for exclusion[7] have been received. *Id.* at ¶12-13.

Class members' assessment of the settlement, expressed either directly or indirectly by their failure to object, is an additional factor on which district courts rely to determine objective fairness. *See Turner*, 472 F. Supp. 2d at 852 (only two objections out of 3800 potential claimants strongly favored settlement approval); *In re Train Derailment Near Amite Louisiana*, No. CIV.A. MDL NO. 1531, 2006 WL 1561470, at *13 (E.D. La. May 24, 2006) (lack of class member objections to the fairness of the proposed settlement considered a factor in approving settlement); *In re Microstrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906 (E.D. Va. 2001) ("perhaps the most significant factor" in determining whether a settlement is adequate is the class's reaction to it).[8]

**B.      Notice Was Adequate.**

Lead Plaintiffs fully complied with the Court's Order concerning notice, which was designed to provide Class members with constitutionally sufficient notice of this action and of their opportunity to be heard. Bravata Decl. ¶2-9. The notice advised Class Members of the deadline to request exclusion from or object to any part of the Settlement by June 24, 2021. *Id.* To

---

[7] One invalid request for exclusion was received by the Claims Administrator, but the sender has not to date provided necessary transaction information and documentation. *Id.* at ¶12.

[8] This Court certified the class preliminarily and for settlement purposes. *See* ECF No. 95.

date, there have been zero objections and only one (invalid) request for exclusion. *Id.* These facts weigh in favor of final approval of the Settlement.

**C.     The Court Should Approve the Plan of Allocation**

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the Net Settlement Fund among eligible Class members. A court's assessment of the validity of a plan of allocation is governed by practically the same standards of review applicable to the settlement as a whole---the plan must be fair and reasonable. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members… equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust*, 669 F.2d at 238.

When formulated by competent and experienced class counsel, an allocation plan need have only a "reasonable, rational basis." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004); *White v. NFL*, 822 F.Supp. 1389, 1424 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992). Lead Plaintiffs submit that the proposed Plan of Allocation is fair and reasonable and should be given final approval together with the Settlement.

The proposed Plan of Allocation was fully described in the Notice sent to the Class, at pages 6-11 thereof. *See* Bravata Decl. , Ex. C. It was formulated by Lead Counsel, in consultation with a damages consultant, with the goal of reimbursing Class members in a fair and reasonable manner consistent with the federal securities laws as applied to Lead Plaintiffs' theory of the case. Specifically, the Settlement Fund will be allocated based on Lead Plaintiffs' estimate of the

16

amounts by which the value of SAEX securities were artificially inflated during the Class Period. The Plan of Allocation was carefully crafted by Lead Counsel to reasonably and rationally apportion the Net Settlement Fund in an equitable manner, and therefore it meets all requirements for this Court's approval.

## V.    CONCLUSION

For the foregoing reasons, as well as the reasons contained in any later-filed reply papers, the Court should finally certify the Settlement Class and approve the proposed class action settlement, the notice plan, and the Plan of Allocation.

Dated: June 1, 2020

Respectfully submitted,

**STECKLER WAYNE COCHRAN PLLC**

*/s/ Stuart L. Cochran*
Stuart L. Cochran
Texas Bar No. 24027936
Braden M. Wayne
Texas Bar No. 24075247
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75219
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: stuart@swclaw.com
          braden@swclaw.com

*Co-Liaison Counsel for the Class*

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Brent J. LaPointe, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

17

Email: lrosen@rosenlegal.com
Email: blapointe@rosenlegal.com

*Co-Lead Counsel for the Class*

**HILLIARD MARTINEZ GONZALES LLP**

*/s/ Marion M. Reilly*
Marion M. Reilly
John B. Martinez
719 South Shoreline, Suite 500
Corpus Christi, TX 78401
Telephone: (361) 882-1612
Facsimile: (361) 882-3015
marion@hmglawfirm.com
john@hmglawfirm.com

*Co-Liaison Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel for the Class*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Stuart L. Cochran
Stuart L. Cochran