**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| JOHN BODIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:19-cv-03089 |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | |
| SAEXPLORATION HOLDINGS, INC., JEFF HASTINGS, BRIAN BEATTY, BRENT WHITELEY, L. MELVIN COOPER, GARY DALTON, DAVID D. SGRO, GREGORY R. MONAHAN, AND MICHAEL FAUST, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSELS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARD TO CO-LEAD PLAINTIFFS**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 8

II.   PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ............. 10

    A.    Attorneys' Fees Should Be Awarded From the Settlement's Common Fund ...... 10

    B.    The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method ............................................................................................................ 11

    C.    An Award of 33⅓% of the Gross Settlement Fund Is Appropriate ...................... 13

    D.    Application of the *Johnson* Factors Supports Co-Lead Counsel's Request for a 33⅓% Fee ........................................................................................................ 14

        1.    The Time and Labor Required .................................................................. 15

        2.    Novelty and Difficulty of the Issues ......................................................... 17

            (a)    Liability Could Be Difficult to Prove ........................................... 17

            (b)    Obtaining Class Certification and Proving Recoverable Damages Could Be Difficult .......................................................................... 18

            (c)    Any Judgment Obtained in Favor of the Class Could be Difficult or Impossible to Collect ................................................................ 20

        3.    Skill Required: The Experience, Reputation, and Ability of the Attorneys ................................................................................................................... 21

        4.    The Preclusion of Other Employment ...................................................... 21

        5.    The Customary Fee for Similar Work in the Community ........................... 22

        6.    Whether the Fee Is Fixed or Contingent .................................................. 22

        7.    Time Limitations Imposed by the Client or the Circumstances ............... 22

        8.    The Amount Involved and the Results Obtained ...................................... 23

        9.    The Undesirability of the Case ................................................................. 23

        10.   The Nature and Length of the Professional Relationship with the Client 24

i

        11.     Awards in Similar Cases ........................................................................... 24

    E.     The Class's Reaction to The Fee Request............................................................. 24

    F.     A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .... 25

    G.    Plaintiffs' Counsel's Expenses Were Reasonably And Necessarily Incurred in the Prosecution of this Action.......................................................................................... 26

III.    THE PROPOSED CO-LEAD PLAINTIFFS AWARD SHOULD BE GRANTED ........ 27

IV.    CONCLUSION.................................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,*
1:13-cv-23878 (S.D.Fl.) ................................................................................................ 21

*Barton v. Drummond Co.,*
636 F.2d 978 (5th Cir. 1981) ......................................................................................... 3

*Bergquist v. FyBX Corp.,*
No. Civ.A. 02-722, 2003 WL 22081368 (E.D. La. Aug. 29, 2003) .......................................... 11

*Billitteri v. Sec. Am., Inc.,*
No. 3:09-CV-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011) ............................... 14, 16

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ....................................................................................................... 3

*Branca v. First USA Paymentech, Inc.,*
No. 3:97- CV-2507-L (N.D. Tex. Jan. 4. 2001) .............................................................. 17

*Braud v. Transp. Serv. Co. of Illinois,*
No. CIV.A. 05-1898, 2010 WL 3283398 (E.D. La. Aug. 17, 2010) ................................ 16

*Burford v. Cargill, Inc.,*
No. 05-0283, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) ....................................... passim

*City of Providence v. Aeropostale, Inc.,*
No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................... 19

*Di Giacomo v. Plains All Am. Pipeline,*
No. CIV.A.H-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) ...................... 9, 19, 20

*Evans v. TIN, Inc.,*
No. CIV.A. 11- 2182, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) ................................ 6, 18

*Faircloth v. Certified Fin. Inc.,* No. CIV. A.,
99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) ................................................... 17, 20

*Finkel v. Docutel/Olivetta Corp.,*
CA3–84–0566–T (N.D. Tex. Feb. 23, 1990) ................................................................. 17

*Goldstein v. MCI WorldCom,*
340 F.3d 238 (5th Cir. 2003) ........................................................................................ 11

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)...........................................................................................4, 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)............................................................................................... 12

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 20

*In re Bayou Sorrel Class Action*,
  No. 6:04CV1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ........................................... 4, 7

*In re Catfish Antitrust Litig.*,
  939 F. Supp. 493 (N.D. Miss. 1996)..........................................................8, 9, 17, 21

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005)............................................................................................ 6

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 852 (W.D. Pa. 1995)................................................................................. 6

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997)............................................................................ 7, 17

*In re DrKoop.com*,
  No. 00-CA-427-JRN (W.D. Tex. Nov. 14, 2001)...................................................... 17

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
  447 F. Supp. 2d 612 (E.D. La. 2006)......................................................................... 5

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................... 16

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................................. 10

*In re Indep. Energy Holdings PLC*,
  No. 00 CIV. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)............................. 11

*In re Lomas Fin. Corp. Sec. Litig.*,
  No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) ....................................................... 17

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................. 21

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
 148 F.3d 283 (3d Cir. 1998) .................................................................................. 5

*In re Rent-Way Sec. Litig.*,
 305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................................................. 18

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................... 20

*In re Rite Aid Corp. Sec. Litig.,*
 396 F.3d 294 (3d Cir. 2005) .................................................................................. 5

*In re Star Scientific, Inc. Securities Litigation*,
 3:13-cv-00183 (E.D.Va) ...................................................................................... 21

*In re Sumitomo Copper Litig.*,
 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................... 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
 No. 02-168WHW, 2008 WL 906254 (D.N.J. Mar. 31, 2008) ............................. 10

*In re The Mills Corp. Sec. Litig.*,
 265 F.R.D. 246 (E.D. Va. 2009) .......................................................................... 21

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................ 19

*In re Vioxx Prod. Liab. Litig.*, MDL No.,
 1657, 2013 WL 5295707 (E.D. La. Sept. 18, 2013) ........................................... 17

*In re Vitamin C Antitrust Litig.*,
 No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........... 20

*In re Warner Commc'ns. Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................... 13

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
 364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................. 9, 21

*In re Zonagen, Inc. Sec. Litig.*,
 322 F. Supp. 2d 764 (S.D. Tex. 2003) ................................................................. 12

*Jenkins v. Trustmark Nat. Bank,*
 300 F.R.D. 291 (S.D. Miss. 2014) .......................................................... 4, 7, 15, 20

v

*Johnson v. Ga. Highway Express,*
   488 F.2d 714 (5th Cir. 1974) ................................................................................. 4, 7

*Jones v. Diamond,*
   636 F.2d 1364 (5th Cir. 1981) ................................................................................. 15

*Kitson v. Bank of Edwardsville,*
   No. CIV. 08-507-GPM, 2010 WL 331730 (S.D. Ill. Jan. 25, 2010) ........................ 17

*Kleinman v. Harris,*
   Civil Action No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) .............................. 17

*Levitin v. A Pea in the Pod, Inc.,*
   No. 3:94-CV-0247 (N.D. Tex. Mar. 27, 1998) ........................................................ 17

*Lindsey v. Memphis-Shelby Cty. Airport Auth.,*
   229 F.3d 1150 (6th Cir. 2000) ................................................................................. 12

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir. 1983) ................................................................................... 10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
   547 U.S. 71 (2006) ..................................................................................................... 4

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ................................................................................... 11

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.,*
   818 F.2d 278 (2d Cir. 1987) .................................................................................... 19

*Schwartz v. TXU Corp.,*
   No. 3:02-CV-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .............................. passim

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .................................................................... 7, 13

*Stoetzner v. U.S. Steel Corp.,*
   897 F.2d 115 (3d Cir. 1990) .................................................................................... 18

*Streber v. Hunter,*
   221 F.3d 701 (5th Cir. 2000) ................................................................................... 13

*Teichler v. DSC Commc'ns Corp.,*
   CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ........................................................ 17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................4

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007)...................................................................................18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ......................................................................................passim

## Statutes

15 U.S.C. §78u–4(a)(6).........................................................................................................6

15 U.S.C. §78u- 4(a)(4) .......................................................................................................20

## Other Authorities

Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* (NERA Economic Consulting, 1996).......................................................................................................7

Report of Third Circuit Task Force: Court Awarded Attorney Fees,
    108 F.R.D. 237 (1986) .....................................................................................................5

Co-Lead Plaintiffs Amrit Kumar and Tony Tep ("Lead Plaintiffs" or "Plaintiffs")[1] hereby move this Court, pursuant to Fed. R. Civ. P. 23for the entry of an Order: (i) awarding $1,183,332.00 in cash as attorneys' fees; (ii) approving the reimbursement of expenses incurred by counsel in successfully prosecuting and resolving this litigation in the amount of $39,939.68, and (iii) approving a compensatory award in the amount of $5,000 each, or $10,000 in total, for Plaintiffs.

## I.   INTRODUCTION[2]

The Settlement obtained by Plaintiffs' Counsel[3] on behalf of the Settlement Class represents an excellent recovery and an above average settlement recovery in securities class action litigation. When accounting for the statistically significant stock drops during the Class Period, the settlement recovers approximately 22.78% of the Class's estimated damages of $15.58 million. *See* Joint Decl. ¶20.[4]

---

[1] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated and filed with the Court on February 8, 2021, ECF No. 90 (the "Stipulation").

[2] A description of the claims alleged and the procedural history of the action are set forth in Sections II and III of the Joint Declaration of Reed R. Kathrein and Phillip Kim in Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement, Plan of Allocation, and Class Certification; and (2) Plaintiffs' Counsels' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Co-Lead Plaintiffs ("Joint Decl."). So as not to burden the Court with repetitive information, Plaintiffs incorporate those sections by reference herein. All capitalized terms in the Joint Declaration have the same meaning when capitalized herein.

[3] "Plaintiffs' Counsel is Co-Lead Counsel The Rosen Law Firm, P.A. and Hagens Berman Sobol Shapiro LLP, together with and Liaison Counsel Steckler Wayne Cochran PLLC and Hilliard Martinez Gonzales LLP.

[4] Citations to Joint Decl. ¶ __ are to the Joint Declaration of Reed R. Kathrein and Phillip Kim in Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement, Plan of Allocation, and Class Certification; and (2) Plaintiffs' Counsels' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs.

Plaintiffs' Counsel devoted substantial time and financial resources in prosecuting this action to achieve this recovery. Prior to drafting the complaints filed herein on behalf of Co-Lead Plaintiffs, Plaintiffs' Counsel: conducted an exhaustive search of all public information available about SAExploration Holdings, Inc. (the "Company") and its senior management, including both its U.S. Securities and Exchange Commission filings and articles; retained private investigators to interview percipient witnesses; and reviewed a number of analyst reports written about the Company before, during, and after the alleged class period.

In conjunction with the proposed Settlement, Plaintiffs' Counsel negotiated the detailed terms and conditions of the settlement papers with Defendants over a number of weeks. Co-Lead Plaintiffs then filed the Stipulation and a motion seeking preliminary approval of the Settlement. ECF No. 90. Following this Court granting preliminary approval (ECF No. 95), Plaintiffs' Counsel established the escrow fund for the Settlement proceeds and worked with the claims administrator to ensure that adequate and sufficient notice was published and mailed pursuant to the Court's direction. *See* Bravata Decl. ¶¶ 2-11.[5]

Having obtained a significant recovery for the Class, Plaintiffs' Counsel, which have pursued this case on a fully contingent basis, requests attorneys' fees of one-third (33.33%) of the Settlement Fund ($1,183,332.00 in cash).

Plaintiffs' Counsel also requests reimbursement of $39,939.68 in out-of-pocket expenses, which were advanced for the conduct of this litigation and which were necessarily and reasonably incurred to prosecute this case. In addition, Co-Lead Plaintiffs request a reasonable compensatory award totaling $10,000 for the time they spent actively litigating and managing this case. *See*

---

[5] Citations to Bravata Decl. ¶ __ are to the Declaration of Sarah Bravata Concerning (A) Mailing of Postcard Notice, (B) Publication of the Summary Notice, Exclusions Filed, and (C) Report on Requests for Exclusion and Objections, attached as Exhibit 1 to the Joint Decl.

Exhibits 6 & 7 to the Joint Decl., Declarations of Co-Lead Plaintiffs Amrit Kumar and Tony Tep. The requested attorneys' fees and expenses as well as the Plaintiffs' award was set forth in the Notice distributed to the Class. There has not been a single objection to either which evidences the reasonableness of the request. Bravata Decl. at ¶¶ 12-13.

For all these reasons, and based on the supporting documentation submitted herewith[6], Plaintiffs and Plaintiffs' Counsel believe the requested amounts are fair, reasonable, and just in light of the results achieved, and they respectfully request that the Court award them in full.

## II.     PLAINTIFFS' COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

Plaintiffs' Counsels' thorough and sustained effort was critical in obtaining a substantial and certain recovery for the Class. As such, Plaintiffs' Counsel respectfully requests that the Court grant its request of $1,183,332.00 in attorneys' fees.

### A.     Attorneys' Fees Should Be Awarded From the Settlement's Common Fund

Following the Supreme Court, which "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Fifth Circuit has applied the "common fund" doctrine for decades. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("it is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against

---

[6] In support of these applications, Plaintiffs also submit: (a) Declaration of Phillip Kim on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses, attached as Exhibit 3 to the Kim Decl. ("Kim Fee Decl."); (b) Declaration of Reed Kathrein on behalf of Hagens Berman Sobol Shapiro LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit 4 to the Kim Decl. ("Kathrein Fee Decl.");(c) Declaration of Stuart Cochran on behalf of Steckler Wayne Cochran PLLC Concerning Attorneys' Fees and Expenses, attached as Exhibit 5 to the Kim Decl. ("Cochran Fee Decl."); and (d) Declaration of Marion K. Reilly on behalf of Hilliard Martinez Gonzales LLP Concerning Attorneys' Fees and Expenses, attached as Exhibit 3 to the Kim Decl. ("Reilly Fee Decl.")

a common fund created by the attorneys' efforts"); *see also, e.g., Burford v. Cargill, Inc.,* No. 05-0283, 2012 WL 5471985, at *1-2 (W.D. La. Nov. 8, 2012); *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006).

Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to undertake risky and complex litigation to seek redress for damages inflicted on entire classes of persons. *See, e.g., Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). Indeed, the Supreme Court has emphasized that private securities cases, such as this litigation, are "'an indispensable tool with which defrauded investors can recover their losses' – a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 n.4 (2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). Accordingly, common fund fee awards encourage and support meritorious class actions and thereby promote private enforcement of, and compliance with, the federal securities laws.

B.     **The Court Should Award Attorneys' Fees Using the Percentage of Recovery Method**

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012). "[D]istrict courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the 'preferred method.'" *Id.* at 643 (citing *Johnson v. Ga. Highway Express,* 488 F.2d 714, 717-19 (5th Cir.

11

1974)); *see also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases and stating that "the percentage method is widely used … throughout the Fifth Circuit in common fund cases").

Although either method may be utilized, "[t]he percentage-of-recovery method is generally favored [over the lodestar method] in common fund cases because it allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)); *Gunter*, 223 F.3d at 198.  In addition to "align[ing] the interests of class counsel with those of the class members," the percentage method also "allows for easy computation." *Union Asset Mgmt.*, 669 F.3d at 643. Conversely, the lodestar method has been called "difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation." Manual on Complex Litigation (4th) §14.121; *Schwartz*, 2005 WL 3148350, at *25 ("Numerous courts and commentators have stated that the percentage method is vastly superior to the lodestar method for a variety of reasons, including an incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court.").[7]

---

[7] *See* Report of Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 246-49 (1986) (identifying a number of deficiencies with the lodestar method, including: (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration.); *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.,* 447 F. Supp. 2d 612, 628-69 (E.D. La. 2006) (discussing the pervasive criticism of the lodestar method of calculating attorneys' fees).

Additionally, the Private Securities Litigation Reform Act ("PSLRA") provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u–4(a)(6). "[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005)); *see also Union Asset Mgmt.*, 669 F.3d at 643 (noting the "near-universal adoption of the percentage method in securities cases" following the passage of the PSLRA).

Finally, the Court could "conduct a rough lodestar cross check as is the customary practice to ensure that the requested amount of attorney's fees is reasonable." *Evans v. TIN, Inc.*, No. CIV.A. 11- 2182, 2013 WL 4501061, at *6 (E.D. La. Aug. 21, 2013). Given the fact that this securities class action is a "paradigmatic common fund case," *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 852, 860 (W.D. Pa. 1995) (internal quotation omitted), Plaintiffs' Counsel respectfully submits that the Court should apply the percentage-of-fund method, cross-checked against the lodestar.

### C. An Award of 33⅓% of the Gross Settlement Fund Is Appropriate

Under the percentage-of-recovery method, the Court determines the benchmark percentage to be applied to the actual monetary value conferred to the class members by the settlement. *Burford*, 2012 WL 5471985, at *1. "After setting the benchmark, the Court applies the *Johnson* factors to determine whether a positive or negative adjustment of the benchmark is warranted." *Id*. at *1 (internal quotation omitted). Here, the value of the settlement is $3,550,000 in cash, plus interest earned from the date the settlement funds were deposited in the escrow account. Plaintiffs' Counsel respectfully submit that a benchmark percentage of one-third (33⅓% ) be applied without adjustment.

13

"[D]istrict courts in the Fifth Circuit have awarded percentages of approximately one- third contingency fee." *Burford*, 2012 WL 5471985, at *2 (quoting *In re Combustion, Inc.*, 968 Supp. 1116, 1133 (W.D. La. 1997)); *Jenkins*, 300 F.R.D. at 300 ("it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third").[8]  Recently, courts in the Fifth Circuit have set the "benchmark percentage" at, and awarded, one third of the common fund. *Burford*, 2012 WL 5471985, at *2; *see also Bayou Sorrel,* 2006 WL 3230771 at *7 (awarding 36% of the common fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1156 (W.D. La. 1997)(awarding fee of 36% of $127 million settlement). Accordingly, there is ample precedent from courts within the Fifth Circuit, as well as nationwide survey evidence, to support the requested fee. *See Jenkins*, 300 F.R.D. at 307 (awarding one third of the settlement fund); *Schwartz*, 2005 WL 3148350, at *27 (collecting cases and stating that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000)("based on the opinions of other courts and the available studies of class action attorneys' fees awards (such as the NERA study), this Court concludes that attorneys' fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been routinely awarded in class actions. Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.")

> **D.**    **Application of the *Johnson* Factors Supports Co-Lead Counsel's Request for a 33⅓% Fee**

---

[8] *See also* Denise N. Martin, Vinita M. Juneja, Todd S. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* 12-13 (NERA Economic Consulting, 1996) (surveying data from 433 securities class actions and concluding that: "[r]egardless of case size, fees average approximately 32 percent of the settlement.").

In *Johnson*, 488 F.2d at 717-719, the Fifth Circuit set forth a number of factors to be considered in determining the reasonableness of class counsel's fee request:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*See Union Asset Mgmt.*, 669 F.3d at 642 n.25. "The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case." *Schwartz*, 2005 WL 3148350, at *28; *see also In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("not every [*Johnson*] factor need be necessarily considered"). Here, because each of the relevant *Johnson* factors weighs in favor of the requested fee, a fee of 33⅓% —which represents a reasonable 1.28 multiplier of Plaintiffs' Counsel's lodestar—of the common fund is justified.

### 1.    The Time and Labor Required

As detailed herein, and in the Final Approval Memorandum, Plaintiffs' Counsel prosecuted the Action on a wholly contingent basis. Plaintiffs' Counsel's litigation efforts on behalf of the Class include: (a) conducting a detailed investigation of potential claims against Defendants that resulted in the filing of Plaintiffs' initial complaint and the Amended Class Action Complaint; (b) moving, pursuant to the PSLRA for appointment of Co-Lead Plaintiffs and Co-Lead Counsel; (c) overseeing investigative interviews of witnesses, including several former employees, identifying certain witnesses and developed leads; (d) consulting with experts on corrective disclosure dates and damages, (e) drafting and filing the Amended Complaint; (f) engaging in settlement

15

negotiations; (g) drafting a detailed mediation brief and attending a full-day mediation and subsequently memorializing the substantive terms of the settlement term sheet; (h) drafting settlement documentation, including motion papers in support of preliminary approval of the Settlement, (i) supervising the program to provide notice to the Settlement Class, and (j) drafting motion papers in support of final approval of the settlement. Joint Decl. ¶ 30.

Additionally, the process by which Plaintiffs' Counsel resolved this action involved intense and diligent effort. Settlement was only reached after Plaintiffs' Counsel conducted a thorough investigation of the facts of the case and potential claims, assessed the likelihood of a recovery for the Class, and engaged in arm's length negotiations with Defendants over the course of several weeks before agreeing to settle the case in principle. Plaintiffs' Counsel then negotiated the specific terms of the settlement agreement and eventually drafted the settlement papers. Joint Decl. ¶30. The efforts that were required to complete these tasks were significant and undertaken at risk, given the contingency-based nature of Plaintiffs' Counsel's representation. To date, Plaintiffs' Counsel has spent 1,345.15 hours prosecuting this case. Joint Decl. ¶¶ 29-36. Plaintiffs' Counsel have also incurred $39,939.68 in, as yet, unreimbursed litigation expenses. *Id.* These expenses were required to achieve the settlement.

In addition, the timing of the Settlement itself is a benefit that Plaintiffs' Counsel has conferred on the Class. Achieving a beneficial outcome for the Class at this stage of the litigation, weighs in favor of awarding the requested fee. *See Schwartz*, 2005 WL 3148350, at *29 (efficiency and effectiveness should be rewarded) (*citing In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (early settlements are consistent with the purposes of the Federal Rules of Civil Procedures)); *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *11 (S.D. Tex. Dec. 19, 2001) (an emphasis on the number of

hours would penalize counsel for obtaining early settlement). As such, the Court should find that a settlement at this stage benefits the Class, and that the labor and time Co-Lead Counsel invested in this case supports the requested fee.

### 2.    Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiffs' Counsels' request for attorneys' fees. As a general matter, securities litigation is "notoriously difficult and unpredictable." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (internal quotation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168WHW, 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) ("this case's complexity is undeniable, given its facts and area of law, securities law."). In addition, as described below, this action involved complex issues of law and fact across two continents arising from allegations of Defendants' materially false and misleading statements.

### (a)    Liability Could Be Difficult to Prove

Plaintiffs bear the burden of establishing each of the elements of the claims brought against Defendants under the Securities Exchange Act of 1934 ("Exchange Act"). Although Plaintiffs believe the allegations of the Complaint would ultimately translate into a strong case for liability after the completion of discovery, Plaintiffs are also aware that many risks were involved in proving their claims. *See Schwartz*, 2005 WL 3148350, at *29 ("Federal Securities class action litigation is notably difficult and notoriously uncertain."). Indeed, Plaintiffs faced numerous hurdles to establishing liability. These legal challenges included establishing that Defendants made misstatements or omissions of material fact during the alleged Class Period, that each of the Defendants acted with scienter with regards to the claims under the Exchange Act, and the need to prove loss causation. Post-PSLRA rulings make clear that the risk of failing to establish these elements–and receiving no recovery at all–has increased exponentially since the statute's enactment in 1995. *See In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)

17

("securities actions have become more difficult from a Plaintiffs' perspective in the wake of the PSLRA"); *see also Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and WorldCom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

Defendants have and certainly would continue to argue that Plaintiffs could not establish that each of the individual Defendants knew that the alleged misstatements were false when made or that the allegedly incomplete disclosures were materially misleading. While in this case at least one of the individual Defendants, former CFO Brent Whiteley, has subsequently pled guilty to six criminal counts, including conspiracy, fraud, and obstruction of the U.S. Securities Exchange Commission's investigation, other individual Defendants and the Company have argued and would continue to argue that they lacked scienter. Simply put, establishing these elements could be a substantial hurdle – one which many plaintiffs have failed to overcome. *See Bergquist v. FyBX Corp.*, No. Civ.A. 02-722, 2003 WL 22081368, at *10-11 (E.D. La. Aug. 29, 2003) (granting summary judgment to defendants, dismissing federal securities claims); *see also In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *8 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (scienter implicates "not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care.").

### (b) Obtaining Class Certification and Proving Recoverable Damages Could Be Difficult

To obtain a class-wide recovery, Plaintiffs would be required to obtain – and retain – class certification by proving that Defendants made materially false and misleading statements during the Class Period and that the Company's shares traded in an efficient market. Defendants could

18

contest class certification at the time of the original motion, at summary judgment, and again at trial. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) (defendants may rebut the presumption of reliance at the class certification stage). To prevail at trial, Plaintiffs would also be required to prove the amount of the artificial inflation of SAExploration Securities throughout the Class Period and that it was removed by the disclosure of true facts. *See Lindsey v. Memphis-Shelby Cty. Airport Auth.*, 229 F.3d 1150 (6th Cir. 2000)(approving settlement and highlighting risk of proving damages).

Loss causation and damages are not elements of a securities claim that are within the knowledge of the jurors to consider on their own.  Consequently, following a battle of experts on these issues, there is a significant risk that the jury would award substantially less damages than the maximum damages identified by Lead Counsels' expert. The figures proffered by Lead Counsels' expert are based on Plaintiffs' theory of liability and assume that every element of the Class's liability and damages theories are accepted by the jury as being correct and recoverable, each of which Defendants vigorously dispute. Thus, the viability of these preliminary estimates as an actual calculation for damages could be affected by many factors that arise in the litigation, including Defendants' rebuttals and defenses to Plaintiffs' damage calculations and expert testimony. Before the jury even considers conflicting testimony, it is possible that Plaintiffs' proposed expert testimony could be the subject of a *Daubert* motion or be deemed otherwise inadequate, further supporting the guaranteed Settlement. *See In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 782 (S.D. Tex. 2003) (granting summary judgment where Plaintiffs' expert report was insufficient to establish loss causation as a matter of law).

While Lead Counsel believe that there exists a firm basis for an expert to opine on the measure and amount of total damages, it is possible that, in the unavoidable "battle of experts," a

19

jury might disagree with the Class's expert, or merely find Defendants' expert(s) more persuasive. *See, e.g., Streber v. Hunter,* 221 F.3d 701, 726 (5th Cir. 2000), *reh'g en banc denied*, 233 F.3d 576 (5th Cir. 2000) (jury can believe whichever expert it finds more credible); *In re Warner Commc'ns. Sec. Litig.,* 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."). Consequently, "[a]lthough Plaintiffs maintain they would likely be successful on the merits at trial," the complicated nature of the case and the uncertainty of prevailing at trial supports approval of the settlement. *Shaw*, 91 F. Supp. 2d at 960.

### (c)    Any Judgment Obtained in Favor of the Class Could be Difficult or Impossible to Collect

Even if Plaintiffs were to take this case to trial, prevail on liability, prove damages, and obtain a judgment against Defendants more favorable than the Settlement—each of which remains uncertain—all or a significant portion of such judgment might ultimately prove to be uncollectable. In the time since this lawsuit was commenced, Defendant SAExploration has filed for protection under Chapter 11 of the U.S. Bankruptcy Code (*see* ECF No. 69 (Order Staying Case)). On December 17, 2020. Defendant SAExploration entered into a final consent judgment with the U.S. Department of Justice and Securities Exchange Commission. Two of the individual Defendants— former CEO Jeffrey Hastings and former CFO and General Counsel Brent Whiteley—have been charged with multiple felonies in the U.S. District Court for the Southern District of New York. Each of the indictments includes multiple counts for disgorgement and penalties. Further, ongoing litigation related to the facts alleged in the Complaint in this action presents substantial demands on the proceeds of applicable policies of directors & officers liability insurance.

### 3.   Skill Required: The Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors, the skill required and the experience, reputation, and ability of the attorneys, also support the requested fee award. Lead Counsel have many years of experience in complex federal civil litigation, particularly the litigation of shareholder, securities, and other class actions. *See* Joint Decl., at ¶29. Lead Counsels' experience enabled them to conduct extensive investigation into the relevant facts and identify the complex issues of accounting and damages involved in this case, and formulate strategies to prosecute it effectively. Based upon Plaintiffs' Counsels' diligent efforts, and their skill and reputation, they were able to negotiate a very favorable result.

It is also important to recognize that Defendants were represented by highly-experienced lawyers from prominent and well-respected national law firms, including Sidley Austin LLP, Vinson & Elkins LLP, and McKool Smith PC. The ability of Plaintiffs' Counsel to obtain such a favorable settlement for Co-Lead Plaintiffs and the Class in the face of such formidable legal opposition confirms the quality of their representation. Accordingly, this factor also supports the requested percentage. *See Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-01568-F, 2011 WL 3585983, at *7 (N.D. Tex. Aug. 4, 2011) ("[B]ecause of the extremely effective work of opposing counsel … The skill required here … certainly justifies the contemplated award.").

### 4.   The Preclusion of Other Employment

As previously noted, Plaintiffs' Counsel spent 1345.15 hours litigating this case on behalf of Plaintiffs and the Class.[9] Joint Decl. at ¶¶30-34, Kim Decl. at ¶¶5-6; Kathrein Decl. at ¶¶ 5-6; Cochran Decl. at ¶¶6-7; Reilly Decl. at ¶¶6-7. This is time counsel could have devoted to other

---

[9] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Class.

matters. Accordingly, this factor further supports the requested fee. See *Burford*, 2012 WL 5471985, at *3 ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter … This factor weighs in favor of a substantial fee award.").

### 5.     The Customary Fee for Similar Work in the Community

As set forth in Section II.C, *supra*, the one-fourth fee requested in this case is commonly awarded for similar work in the Fifth Circuit.  Therefore, this factor weighs in favor of approving a fee of one-fourth of the common fund.

### 6.     Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook this class action on a contingency-fee basis, and carried both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or expense outlays for over a year. Contingency risk alone is a factor supporting the requested fee. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981), overruled on other grounds by *Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir. 1986).  Indeed, the risk of loss in this case is not illusory. As stated above, securities claims are extremely complicated and require expert testimony to prove. Success is never assured. Despite the risk that Plaintiffs' Counsel's significant time and effort could go uncompensated, Plaintiffs' Counsel diligently prosecuted the Class's claims. Consequently, this factor weighs in favor of approving Plaintiffs' Counsel's fee request. *See Jenkins*, 300 F.R.D. at 309.

### 7.     Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

22

### 8.      The Amount Involved and the Results Obtained

As discussed above, assuming that every element of the Class's liability and damage theories were accepted by the jury as being correct and recoverable, a preliminary damage study determined that the maximum recovery taking into account the statistically significant stock drop would be $15.58 million. Thus, Plaintiffs' Counsel has recovered approximately 22.78% of the class's maximum provable damages, and far more than the damages Defendants asserted the Class suffered (*i.e.*, $0) given their belief that Co-Lead Plaintiffs would be unable to demonstrate scienter or substantial damages. In light of the many aforementioned risks involved in this litigation, this is an excellent result. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical recovery in most class actions generally is three-to-six cents on the dollar.").

### 9.      The Undesirability of the Case

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee.  While Plaintiffs' Counsel did not consider this case to be "undesirable," there are substantial risks inherent in financing and prosecuting contingent litigation of this type and Plaintiffs' Counsel knew that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, the "undesirability" of the case also weighs in favor of the requested fee.  *See, e.g., Billitteri*, 2011 WL 3585983, at *8 (where a case "raised particularly difficult issues," including the risk of "no recovery whatsoever," this factor supported an increase in the fee); *Braud v. Transp. Serv. Co. of Illinois*, No. CIV.A. 05-1898, 2010 WL 3283398, at *13 (E.D. La. Aug. 17, 2010) (given the "risk of non-recovery" and the burdens of "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee," the Court found that "undesirability in this case warrants an increase in the fee award").

23

**10.      The Nature and Length of the Professional Relationship with the Client**

Plaintiffs' Counsel has represented Plaintiffs in this litigation since 2019. Plaintiffs have been actively involved in this litigation and approved and support the Settlement. Throughout the litigation, Plaintiffs' Counsel has been in communication with Plaintiffs, apprising them of the status of the case as well as reviewing and discussing pleadings, motions, and briefs.

**11.      Awards in Similar Cases**

As discussed above, the requested fee of 33⅓% is consistent with awards granted in class action cases.  Hence, this factor supports the requested fee award.[10]

In sum, the eleven applicable *Johnson* factors all support Plaintiffs' Counsels' request for one-third of the Gross Settlement Fund as attorneys' fees. The percentage method, backed by the *Johnson* factors, therefore supports the granting of Plaintiffs' Counsels' requested fees.

**E.      The Class's Reaction to The Fee Request**

---

[10] *See In re Combustion, Inc.*, 968 F. Supp. at 1136, 1142 (awarding 36% on a settlement fund of $127,396,000); *Teichler v. DSC Commc'ns Corp.*, CA 3–85–2005–T (N.D. Tex. Oct. 22, 1990) ("Plaintiffs' Counsel awarded $10 million on a settlement of $30 million in securities class action") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Kleinman v. Harris*, Civil Action No. 3:89–CV–1869–X (N.D. Tex. June 21, 1993) ("approving fee of approximately one- third of benefit achieved of $1,170,000") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *Faircloth v. Certified Fin. Inc.*, No. CIV. A. 99-3097, 2001 WL 527489, at *9, 12 (E.D. La. May 16, 2001) (awarding 35% on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2013 WL 5295707, at *4-*5 (E.D. La. Sept. 18, 2013) (awarding 33%); *Finkel v. Docutel/Olivetta Corp.*, CA3–84–0566–T (N.D. Tex. Feb. 23, 1990) ("awarding fees amounting to 33% of settlement fund") (cited in *In re Catfish Antitrust Litig.*, 939 F. Supp. at 500); *In re Lomas Fin. Corp. Sec. Litig.*, No. CA–3–89–1962–G (N.D. Tex. Jan. 28, 1992) ("approving fee of almost one-third of benefit") (cited in *In re Combustion, Inc.*, 968 F. Supp. at 1139); *Kitson v. Bank of Edwardsville*, No. CIV. 08-507-GPM, 2010 WL 331730, at *2 (S.D. Ill. Jan. 25, 2010) (awarding 33% of $3,415,000 settlement fund); *In re DrKoop.com*, No. 00-CA-427-JRN, Order and Final Judgment, ECF No. 48 (W.D. Tex. Nov. 14, 2001) (fee equal to 33-1/3% of total recovery, plus expenses); *Levitin v. A Pea in the Pod, Inc.*, No. 3:94-CV-0247, Final Judgment and Order of Dismissal With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery, plus expenses); *Branca v. First USA Paymentech, Inc.*, No. 3:97- CV-2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of total recovery, plus expenses).

24

The claims administrator undertook a robust program to provide notice to potential Settlement Class Members, publishing notice on both *PR Newswire* and *Investors' Business Daily* and mailing or emailing 43,691 notices throughout the world. *See* Bravata Decl. at ¶¶4-8. To date, not one Class member has objected to the Settlement or the requested attorney's fees. *Id*. at ¶ 13. The Notice sent to the Class expressly stated that Plaintiffs' Counsel could seek one-third of the Settlement Amount. Although not a *Johnson* factor, many courts have recognized that the absence, or a minimal number, of objections to a fee request is significant evidence that the requested fee is fair. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (even when 29 members of a 281 person class (i.e., 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Co-Lead Counsels' request").

### F.      A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

In addition to applying the percentage approach to determine attorneys' fees in common fund cases like this one, courts in this Circuit often apply the lodestar method as a "rough cross check" to confirm that the fee determined under the percentage approach is reasonable. *See Evans*, 2013 WL 4501061, at *6; *Burford*, 2012 WL 5471985, at *6 n.1. The lodestar multiplier is calculated by dividing the attorneys' fees that class counsel seeks by class counsel's associated lodestar. *Id*. at *6 n.1. In performing a lodestar analysis, a district court may rely on summaries submitted by the attorneys and need not review actual billing records. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 867 (E.D. La. 2007) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. For example, a court performing a lodestar cross-check need not scrutinize each time entry; reliance on representations by class counsel as to total hours may be sufficient").

25

Here, the cumulative number of hours expended by Plaintiffs' Counsel is 1345.15, and the resulting lodestar for the services performed is $921,392.25

"In the Fifth Circuit, courts set the lodestar multiplier by applying the *Johnson* factors." *Union Asset Mgmt.*, 669 F.3d at 643 n.26.  Here, eleven of the twelve *Johnson* factors apply – and all of them favor an upward adjustment of the lodestar to reflect the significant risks undertaken by Plaintiffs' Counsel herein to obtain a substantial benefit for the Settlement Class.  The requested fee of $1,183,332.00 thus equates to a multiplier of approximately 1.39, based upon the lodestar figure of $931,392.25. This 1.28 multiplier is comparable to or less than those typically awarded courts.

Multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit." *Burford*, 2012 WL 5471985, at *6 n.1; *Di Giacomo*, 2001 WL 34633373, at *11 (stating same and approving 5.3 multiplier); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) ("[I]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases.") (internal quotation omitted). Accordingly, the attorneys' fees sought are plainly reasonable using a lodestar cross-check.

G.     **Plaintiffs' Counsels' Expenses Were Reasonably And Necessarily Incurred in the Prosecution of this Action**

Plaintiffs' Counsel also request the reimbursement of $39,135.37 in expenses reasonably and necessarily incurred while prosecuting this action. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at *19 (S.D.N.Y. May 9, 2014); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).

The majority of the expenses are attributable to mediator, financial damages expert, and investigator fees. *See* Joint Decl. at ¶35. The supporting declarations have attested to the accuracy

of these expenses. *See* Joint Decl. at ¶36; Kim Decl. at ¶8.; Kathrein Decl. at ¶8; Cochran Decl. at ¶8; Reilly Decl. at ¶9. Because the expenses were incurred with no guarantee of recovery, Plaintiffs' Counsel had a strong incentive to keep them at a reasonable level and did so. Plaintiffs' Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible. All were essential to achieving the Settlement and should be reimbursed.[11] Additionally, the Notice of Class Action Settlement informed Class Members that Plaintiffs' Counsel would seek reimbursement of expenses up to $50,000 and, to date, no objection to the expense application has been filed. Bravata Decl. ¶13. The requested expenses should, therefore, be awarded. *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) ("plaintiffs seek reimbursement of expenses … which they have detailed in their submissions to us. These out of-pocket expenses … are compensable … they are also unobjected to and, in our judgment, reasonable"). Consequently, Plaintiffs' Counsel respectfully requests the Court approve the expense reimbursement request to be paid from the common fund in addition to the award of attorneys' fees. *See Jenkins*, 300 F.R.D. at 310-11 (awarding costs in addition to the percentage fee); *Di Giacomo*, 2001 WL 34633373, at *13 (same); *Faircloth*, 2001 WL 527489, at *12 (same).

## III.   THE PROPOSED PLAINTIFFS' AWARD SHOULD BE GRANTED

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class …" 15 U.S.C. §78u-4(a)(4). *See Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (courts "routinely award such costs and expenses both to reimburse the named plaintiffs

---

[11] *See, e.g., In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("[T]he Court concludes that counsel's request for reimbursement of its litigation expenses is reasonable. The principal expenses for which Class Counsel seeks reimbursement are expert witness costs, deposition reporters and transcripts, translation and review of Chinese-language documents, copying, travel, research, and court-filings—all of which are appropriate for reimbursement.").

for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place").

Plaintiffs have performed their duties with attentiveness and diligent oversight. This included reviewing pleadings, motions, and other documents, and frequently communicating with counsel concerning the status of the case, court documents, strategy, and settlement discussion. In light of the work done by Plaintiffs, the amount requested is eminently reasonable. Moreover, the request for the Plaintiffs' award here is the same or less than awards granted in other cases, and there have been no objections to his payment. *See Burford*, 2012 WL 5471985, at *6 (awarding named plaintiffs up to $15,000); *In re Star Scientific, Inc. Securities Litigation,* 3:13-cv-00183 (E.D.Va)  (awarding Co-Lead Plaintiffs $9,500 each); *In re Catfish Antitrust Litig.*, 939 F. Supp. at 504 (awarding each of the named plaintiffs $10,000); *Aranaz, et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,* 1:13-cv-23878 (S.D.Fl.)(Dkt. No. 153) (awarding Co-Lead Plaintiffs $10,000 each).[12] Accordingly, Plaintiffs respectfully ask that the Court grant their request for an award of $5,000 each, or a total of $10,000.

## IV.   CONCLUSION

For all the reasons stated above, in the Final Approval Memorandum, in any reply papers that may be filed in support of either motion, and at the Settlement Hearing, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of

---

[12] *See also In re Xcel Energy*, 364 F. Supp. 2d at 1000 (D. Minn. 2005) ($100,000 collectively awarded to Co-Lead Plaintiffs group as reimbursement); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (awarding $42,000 to class representative as reimbursement for expenses incurred in reviewing documents, traveling, and attending mediation/court session); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding a combined $214,657 to two institutional Co-Lead Plaintiffs).

33⅓% of the Gross Settlement Fund, *i.e.* $1,183,332.00 in cash; (b) approve reimbursement of $39,939.68 in aggregate expenses; (c) grant an award to Plaintiffs in the amount of $5,000 each, or a total of $10,000.

Dated: June 1, 2020                                        Respectfully submitted,

                                                           **STECKLER WAYNE COCHRAN PLLC**

                                                           */s/ Stuart L. Cochran*
                                                           Stuart L. Cochran
                                                           Texas Bar No. 24027936
                                                           Braden M. Wayne
                                                           Texas Bar No. 24075247
                                                           12720 Hillcrest Road, Suite 1045
                                                           Dallas, Texas 75219
                                                           Telephone: (972) 387-4040
                                                           Facsimile: (972) 387-4041
                                                           Email: stuart@swclaw.com
                                                                   braden@swclaw.com

                                                           *Co-Liaison Counsel for the Class*

                                                           **THE ROSEN LAW FIRM, P.A.**

                                                           */s/ Phillip Kim*
                                                           Phillip Kim, Esq.
                                                           Laurence M. Rosen, Esq.
                                                           Brent J. LaPointe, Esq.
                                                           275 Madison Avenue, 40th Floor
                                                           New York, New York 10016
                                                           Telephone: (212) 686-1060
                                                           Fax: (212) 202-3827
                                                           Email: pkim@rosenlegal.com
                                                           Email: lrosen@rosenlegal.com
                                                           Email: blapointe@rosenlegal.com

                                                           *Co-Lead Counsel for the Class*

                                                           **HILLIARD MARTINEZ GONZALES LLP**

                                                           */s/ Marion M. Reilly*
                                                           Marion M. Reilly
                                                           John B. Martinez

29

719 South Shoreline, Suite 500
Corpus Christi, TX 78401
Telephone: (361) 882-1612
Facsimile: (361) 882-3015
marion@hmglawfirm.com
john@hmglawfirm.com

*Co-Liaison Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Reed R. Kathrein*
Reed R. Kathrein
Danielle Smith
Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
danielles@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Co-Lead Counsel for the Class*

30

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Stuart L. Cochran*
Stuart L. Cochran